1811.

*Philadelphia,*
*Saturday,*
March 30.

HECKER *against* JARRET.

When a court has jurisdiction of the action, their officers are not responsible for errors in the process.

Supposing a single judge of the Common Pleas to have a right upon a *habeas corpus* to discharge a defendant who is in execution upon process from that court, still if he does it without notice to the plaintiff, the proceeding is void, and the defendant may be retaken in execution.

*Qu.* Whether the discharge of a defendant, in consequence of a void order by a judge, will amount to a *voluntary escape*, as it respects the sheriff?

If a defendant upon being first taken in execution, omits to shew property to the officer upon which he may levy for the debt, and he is afterwards illegally discharged and retaken upon the same execution, an offer to shew property is then too late.

*Qu.* Whether the acknowledgment of a deputy sheriff of things done by him in the course of his office, is evidence against the sheriff?

The *habeas corpus* act of 1785 extends to commitments under civil process.

THIS was an appeal from the decision of Judge *Brackenridge* at a Circuit Court for *Northampton* in *June* 1809.

It was an action of trespass and false imprisonment against the defendant, who was formerly sheriff of the county of *Northampton*. Plea *non cul.*, with leave to give the special matters in evidence.

Upon the trial of the cause it appeared in evidence, that a judgment had been entered in the Common Pleas against *Hecker* at the suit of *Leonard Engle*, and that an execution in the form prescribed by the act of 21st *March* 1806 issued on the 4th of *May* 1807, upon which the defendant committed *Hecker* to gaol, returning to the writ, that *Hecker* had been unable to satisfy him that he had lands and tenements goods or chattels in his bailiwick whereon the debt and costs could be levied. On the 10th of *June* a *habeas corpus* under the act of 1785 was issued to the gaoler by Judge *Cooper*, one of the associate judges of the Common Pleas, upon which *Hecker* was brought up, the gaoler returning that he was in custody under the above execution, and two executions from justices of the peace, which had been lodged as detainers. The judge discharged him from all, indorsing upon the *habeas corpus*, that the two executions from justices had been served after the return day, and that it appeared to him *from the affidavit of Hecker* that he had offered to produce personal and real property to the sheriff to satisfy the debt in *Engle's* execution, a deed for the land on which *Hecker* resided being also shewn to the judge. On the 28th of *July* the defendant retook him under the same execution, and committed him to gaol a second time. The same judge issued a second *habeas corpus* on the 30th, upon which *Hecker* was again brought before him, and the sheriff heard in opposition. Upon this hearing the judge remanded *Hecker*, certifying in

his order that the sheriff by letter had stated that the defendant had no property on which he could levy, which statement was also corroborated by the declaration of the deputy. These were the arrests and imprisonments complained of, which the defendant justified under the execution.

The material question of fact for the jury was the offer of property; as to which it was admitted that *Hecker* lived on a tract of land which belonged to him; but there were thirty-two judgments against him to an amount greatly beyond its value, and it did not appear that he had offered it to the sheriff. It was proved that he had offered a mare &c. to the sheriff prior to the first arrest; but it was not shewn to have been his property, and he had previously asserted it to be his father-in-law's. His counsel offered evidence of declarations by the sheriff's deputy who took *Hecker* to gaol the second time, that he had then offered him property to levy upon; but the judge overruled the evidence, upon the ground that not the declarations of the deputy, but his acts only, were evidence against the sheriff.

The points of law made for *Hecker*, were that the writ under which the arrest was made, was void by the act of 13th *April* 1807, which repealed the act of 21st *March* 1806, and therefore the arrest was illegal and the discharge by the judge was proper. That at all events the second arrest after the discharge was unlawful. And that supposing the process valid in the first instance, the sheriff had no right to take the body, it being his duty first to levy upon even incumbered land.

His honour charged in favour of the defendant upon all the points, and the jury accordingly found for him. A motion for a new trial was then made by the plaintiff, which the judge overruled, being desirous that the question should be settled in bank.

*S. Ewing* for the plaintiff contended that the decision of the Circuit Court had been erroneous for several reasons. 1. Because the execution was void, having issued under a law which had been repealed, and therefore the taking by the sheriff was a trespass, and Judge *Cooper* had a right to discharge. 2. If he had that right, the sheriff could not retake.

1811.

HECKER.
*v.*
JARRET.

3. If he had not that right, the sheriff having permitted *Hecker* to go at large, it was a voluntary escape, after which he could not retake. 4. That under the acts of *March* 1806 and *April* 1807 no *ca. sa.* could be executed, until the return of *nulla bona.* 5. That the declarations of the sheriff's deputy should have been received as evidence against the sheriff, that property had been offered previous to the second arrest.

1. The writ was issued on the 4th of *May*, under a law which was repealed as to the form of execution on the 13th of *April.* 7 *St. Laws* 567., 8 *St. Laws* 297. It was wholly void. The execution cannot be considered as awarded by the court, but as taken out by the party; and therefore it gave no authority to hold the defendant. *Gilb. on Executions* 82. Under such circumstances a judge of the court had a right to discharge the defendant, in the same manner as if *A* had been taken under an execution against *B*, or as if there had been no judgment, or as if an execution had issued before a *cesset* had expired. The authority is given by the 13th section of the *habeas corpus* act of 18th *Febuary* 1785, 2 *St. Laws* 241., which extends all the preceding sections relative to commitments for a criminal or supposed criminal matter, to commitments under any colour or pretence whatsoever.

2. The second point is self evident. The judge had no right to discharge, if the sheriff had a right immediately to retake. There cannot be two opposing rights, in the legal sense of that word.

3. If the judge had no right to discharge *Hecker*, his act was merely void, like that of any unauthorized individual. His order was no warrant to the gaoler to discharge him. On the contrary the sheriff must in point of law be deemed bound to disobey it, and the discharge as not a compulsory but voluntary act. It was therefore a voluntary escape, and of course it was a trespass in the sheriff to retake the defennant. *Jackson* v. *Smith* (a) is in point. The discharge being the act of the deputy, is of no importance; the sheriff is bound by the acts of the deputy, emphatically as to every thing which relates to the escape of prisoners. 1 *Bl. Com.* 146. He therefore finds himself in a dilemma. If the judge had a right to discharge, the second arrest was a violation of the

(a) 5 *Johns.* 115.

*habeas corpus* act, and a trespass. · If the judge had no right, still the second arrest was a trespass, because the sheriff was not bound by the order, but in contemplation of law voluntarily consented to an escape.

4. The act of assembly intended to exempt the person of the citizen from all liability to arrest, until it should be legally ascertained that there was nothing but the person to satisfy the creditor. The only manner of ascertaining that fact, is by the sheriff's return of *nulla bona*. Something on record is essential. The plaintiff must first issue a *fi. fa.* [TILGHMAN C. J. There is no warrant for that in the law. Suppose the defendant confesses he has no property. Most undoubtedly, the plaintiff may take a *ca. sa.* in the first instance, at his peril.]

5. The declarations of the sheriff's deputy were evidence against him. They were offered to prove a fact, that property had been tendered to the deputy, prior to the arrest, which the deputy had not levied upon, but had taken the body. The acts of the deputy no doubt bind the sheriff; and this was evidence to shew the fact of property offered, and the act of the deputy in afterwards taking the defendant. The refusal to levy on the property was an act, which was proved by the offer and the subsequent arrest.

*Hopkinson* for the defendant. 1. The execution was not void, and as it is a very hard objection, the court will intend a great deal to support it. The repeal of the execution clause in the act of 21st *March* 1806, left the form of execution as it stood at common law, that is, subject to any modification which the court might direct. Form became immaterial, provided the person was not taken when property was shewn. Any form consistent with that privilege was good, if the court sanctioned it; and this court will, for the protection of the sheriff, presume that they did sanction it. But grant that they did not, it was not for the sheriff to judge. The Common Pleas had jurisdiction of the cause; and where that is the case, the sheriff may justify under their process, although it is irregular and void. The *Case of the Marshalsea* (*a*) is express, that when a court has jurisdiction of the cause; and proceeds *inverso ordine* or erroneously, no action lies against

(*a*) 10 *Rep.* 76.

the minister of the court who executes the process. To the same point, 6 *Bac. Abr.* 569. *Trespass D.* 3. 2 *Bac.* 508. *Escape A. Jaques* v. *Cesar.* (*b*) The judge therefore had no right to discharge the defendant. Independent of the *habeas corpus* act, the case is extremely plain. The execution of the court is subject but to the control of the court. A single judge is not the court; his power is in no respect final, as it would be, if he were permitted to discharge from execution. As well might he discharge from the execution of a superior court as from his own. Nor does the *habeas corpus* act give this power. It extends to commitments upon a criminal charge, and to such as are brought about by private violence unassisted by the process of a court, such as the confinement of a ward by a guardian, and the like. But there was no necessity for extending it to arrest or execution upon civil process, because such process could not be feared as an instrument of persecution, while there were already so many means of escaping from it. Supposing however that the argument is against the defendant upon these grounds, still the discharge must be deemed void, because it was *ex parte*, and was founded upon the trick and fraud of *Hecker*, as the judge himself confessed, by remanding him upon the second *habeas corpus*. The plaintiff and sheriff had no notice of the hearing. Notice to the gaoler was nothing as to the great purpose of the hearing. He knew nothing of the circumstances. The judge should have demanded the presence of the opposite party. A discharge without it, was contrary to a fundamental principle of law, and was upon this ground, if upon no other, absolutely void. This court has no means of protecting suitors from the most iniquitous oppression, but by declaring such a discharge to be of no effect.

2. The judge having no right to grant the discharge, the sheriff was intitled to retake *Hecker.* But then

3. A dilemma is contrived, to make the sheriff either way a trespasser. To this however there are two answers. First, this point was not made in the Circuit Court, and therefore cannot be made here, where the propriety of the judgment below is discussed only upon the reasons assigned. A new trial being the object, the court will not grant it upon a mere

(*a*) 2 *Saund.* 101 *y.*

refinement in reasoning. But a better answer is that the escape was not voluntary. It was brought about by the fraud of *Hecker;* and shall it be permitted to him to set up an act produced by his own deception upon the sheriff, as the voluntary act of the latter, and in this way make the fraud protect itself? There is nothing to be found in the code of either statute or common law to justify such an opinion.

4. The fourth point must be considered as abandoned. Surely the law did not intend to delay the plaintiff without some substantial reason. If the defendant has property he must shew it, or he waives his privilege. If he does not shew it, the law will presume that he has none. Until property is shewn and produced, the *ca. sa.* is good.

5. The declarations of the deputy were not evidence, because the offer to which they were said to refer, was made subsequent to the discharge, and of course after the first arrest. If the execution is well executed in the first instance, nothing afterwards can make it irregular. The second arrest was nothing but a continuance of the first; and the single question was whether at the time of the first arrest, any offer of property had been made to render it illegal. Upon this point the finding of the jury, is in effect that no property was shewn.

TILGHMAN C. J. after stating the case, delivered his opinion as follows:

The plaintiff's counsel have made four points in the argument before this court.

1. That the execution issued against the defendant was void, and therefore the sheriff was a trespasser in executing it.

2. That Judge *Cooper* had a right to discharge the now plaintiff on the *habeas corpus*, and therefore the sheriff was a trespasser when he retook him.

3. That if the judge had no right to discharge from the execution, the sheriff was guilty of a voluntary escape, in permitting the now plaintiff to go at large, and therefore could not lawfully retake him.

4. That the judge who tried the cause made a mistake in point of law, when he rejected the evidence offered by the plaintiff to prove that the sheriff's deputy had acknowledged, that the now plaintiff offered him property to levy on, after

1811.

HECKER
v.
JARRET.

he had been *retaken* on the execution, and while he was carrying him to jail.

1. In order to understand the force of the first objection, it is necessary to state, that by the act of 21st *March* 1806, the form of an execution is prescribed, and it is enacted that executions shall issue in that form *and not otherwise.* By that form, the sheriff is directed to levy the debt and costs on the defendant's goods and chattels, but if he has no goods and chattels then on his real estate, and for want of both real and personal estate, then the defendant's body is to be taken &c. This act, so far as relates to the form of execution, was repealed by the act of 13th *April* 1807, which contains a provision in the fifth section, that no writ of *ca. sa.* shall issue in any case, when the defendant has real or personal estate, sufficient to satisfy the plaintiff's demand. The execution against the now plaintiff was issued according to the form of the act of 21st *March* 1806, before the repeal was known, so that this objection is of a nature so very severe as to require no favour. The plaintiff's counsel contend, that the writ was *void,* but I consider it rather as *irregular* than void. In substance it was not contradictory to the act of 13th *April* 1807; because the sheriff was not authorized by it, to take the body, if the defendant had either *personal* or *real* estate to satisfy the execution. But at all events, the sheriff was justifiable in obeying the command of the writ, because it was an action within the jurisdiction of the court who issued the execution. When a court has jurisdiction of the *action,* their officers are not responsible for *errors in the process,* and it would be of most mischievous consequence if they were. This principle is established by the cases cited by the defendant's counsel, from 10 *Rep.* 76., and 2 *Bac. Abr.* 508., *title Escape A.* These cases shew, that where a writ of *capias* issued against a *peer,* the sheriff justified an arrest under it, although it was unlawful to issue such a writ. So the sheriff may justify an arrest on a *ca. sa.* issued on a judgment *post annum et diem,* although not revived by *sci. fa.*

2. The *habeas corpus* issued by judge *Cooper* was under the act of 18th *February* 1785. The defendant's counsel have contended that this act was confined to the cases of persons imprisoned on *criminal* charges. But I am of a dif-

ferent opinion. The twelve first sections of the act relate to criminal matters; but the thirteenth is thus expressed. "All the "provisions herein before made for awarding and granting "writs of *habeas corpus*, and proceeding thereon, in case of "commitment and detainer for any *criminal* or *supposed cri-* "*minal* matter, shall in like manner extend to *all cases* where "any person not being committed or detained for any cri- "minal or supposed criminal matter, shall be confined or re- "strained of his or her liberty *under any colour or pretence* "*whatever*." These words are too plain to admit of doubt. The power of discharging from an execution is a very important one, and should be exercised with great discretion. But the case is peculiarly delicate, where, as in the present instance, the prisoner's right to a discharge, depends on facts of a complicated nature. A man may have property in possession, and yet it may be so incumbered by prior liens, as to be insufficient to satisfy the execution. Or he may have declined to inform the sheriff of his property, in which case he may be fairly said to have waived the benefit of the law, which exempted his body from arrest. But I will not say that the judge had no right to discharge from imprisonment in a case of this nature. I am of opinion however, that granting his right to discharge, his proceedings were void for want of *notice* to the plaintiff in the execution. It is contrary to the first principles of justice, to deprive a man of his rights without a hearing, or an opportunity of a hearing. If a court of record should proceed in this manner, their judgment would be erroneous, and might be reversed on a writ of error. But no writ of error lies on proceedings before a judge out of court. We are therefore obliged to decide upon them, when they come before us in this collateral way. The impropriety of the proceeding on the first *habeas corpus* was manifest to the judge himself. The consequence was what might be expected, he was imposed on by *one* party, because he did not hear the *other*. Of this he was afterwards sensible, when he remanded the prisoner on the second *habeas corpus*.

3. As to the third point, I do not think we are bound to regard it, because it was not made before the judge who tried the cause. I must suppose the merits to be with the

1811.

HECKER
v.
JARRET.

defendant, because the jury were of opinion, that the plaintiff informed the sheriff of no property whereon the execution might be levied prior to the arrest. The argument on which this point rests, seems to have more subtlety than strength. The sheriff does not appear to have been guilty of a voluntary escape, because in fact he did not know of the discharge under the *habeas corpus*, till after it took place. Without giving however any decided opinion on that matter, I do not think that we ought to grant a new trial, even supposing the plaintiff could make good a very refined objection, introduced *now* for the *first* time, and contrary to the merits of the case.

4. It is not necessary to decide, whether the acknowledgment of the deputy, of things done by him in the course of his office, is evidence against the principal, or whether those facts must be proved by the oaths of witnesses. It is a point on which there appears to have been some difference of opinion. But the evidence rejected in this case, was not admissible, because it was not relevant. It was of no consequence, whether property was shewn or not at the time of the second arrest; it ought to have been shewn previous to the original arrest; if that was lawful, so also was the retaking, which was only a continuance of the imprisonment. This case is not of much importance in itself; but some serious considerations have been involved in the points which were made, and supported by the plaintiff's counsel with considerable acuteness. I am of opinion on the whole, that the judgment of the Circuit Court should be affirmed.

YEATES J. concurred.

Judgment affirmed.