The opinion of the Court was delivered by
Duncan T.
The bill of exceptions exhibits a clear and distinct view of the several questions of ,law raised on the trial of this cause, oh five points. The opinion of the Court was requested by the plaintiff in error. • The questions were distinctly answered by the Court, and it is to these answers he now excepts.
The first and second were matters of fact, and as such left properly to the jury ; with the just observation, as to the second, that it was not necessary for the treasurer to make out a bill of particulars, if the party knows what the items are, and objects to them in toto ; but if he.demand such bill of particulars, the party must make it out, and deliver it, before he can sustain an action. The concluding section of the Act establishing a fee bill, is free from all obscurity. “ It shall be lawful for any person to ' refuse payment to any officer, who will not make out a bill of particulars, as prescribed by the Act, signed by him if required ; and also a receipt and discharge signed by him if the fees are -paid.” The requisition to furnish the'bill must be made to justify the refusal. The'request is not confined singly to the signing—the Signature of the name of the officer ; the signature is a component part of the bill. This provision was intended as a check on the officer. The'bill and receipt, if the charges exceeded those allowed by the law, would furnish the fullest and most conclusive evidence, on a prosecution for extortion.
The third received a very satisfactory answer from the Court. The informality or irregularity complained.of in the assessment, could not vitiate the sale. The '3d section of the Act of 13th March, 1815, under which the sales were made, declared it incompetent for the purchaser at the treasurer’s sale to give in evidence any irregularity in the assessment or proceedings of the commissioner or treasurer. ' The actual assessment of the lands as unseated, was submitted to the jury as a fact to be decided by them from the evidence.
The fourth point respected separate deeds for each tract. The plaintiff in error contends, that one deed which he offered to prepare himself, would be in conformity to the *390 law, and save him the expence of separate deeds ; and that the refusal of the Sheriff was an act of oppression and extortion. Waving the question whether such deed of several tracts, assessed in the names of different persons, who for aught that appeared on the trial, were the real owners, would be valid, I cannot see' how it affects the purchaser. It concerns not him, for the fees corhe not out of his pocket. All that he is bound to pay, is the amount of .his bid. The taxes and costs, including the prothonotary’s fees, he is to pay down, and the balance to give bonds for. The whole process from, the return and assessment, to the sale and conveyance, are all of separate tracts. They áre separate services on each tract. The acknowledgment must from its nature, be separate ; the contract of sale, as separateand disconnected, as if the sales had been made to one hundred and ■five different persons. The several services performed by the treasurer, on the sale of each tract, are specified- in the fee bill, and for writing and signing every deed, one dollar and fifty cents i.s allowed by law. The law contemplates the sale of each tract, as it in reality is, a separate transaction, for which there-is a separate deed to be given.- Will it be said that the prothonotary should enter the acknowledgment óf a deed for 105 tracts, for one hundred cents. Wé are not to impute to the Legislature an act of. such extreme imposition on this officer. A compensation so inadequate, contemptible and ridiculous, never could have been intended. As well might Morris & Nicholson, or .the other large adventurers in original titles, the Holland Company, or William Bingham, have insisted on one patent issuing-on 1,000 or .10,000 surveys of which they were the owners. In. the mammoth survey, as it is called, in Luzerne county, though only one patent issued for many thousand acres, more than 12,000, yet the fees were the same as if distinct patents had been issued for each 400 acres ; and this by the decree of this Court under a special Act of Assembly. Shepherd and anthers v. The Commonwealth, 1 Serg. & Rawle, 1. On these points thé Court were prepared to decide at the last term, bqt on the fifth they entertained very serious doubts, and directed a re-argument on this point alone.
The Court of Common Pleas decided, on the ground, that a county treasurer was not included in the 8th. article of *391 the Constitution of this Commonwealth, which provides, “ that members of the General Assembly, and all officers executive and judicial, shall be bound by oath or affirmation, to support the Constitution of this Commonwealth, and to perform the duties of their respective offices with fidelity.” This Court on the most deliberate consideration, have come to a different conclusion from the Court of Common Pleas. The difficulty was not so great on this, as on .another question which at this term hás been very fully discussed, that is, admitting the county treasurer to be bound by the Constitution to take.this oath of office', whether the action could not be supported by the county, taking him to be an officer de facto and not de jure. That a county treasurer invested with such great powers as he is by the laws of this State, having authority to sell the' many millions of lands yet unseated, and whose sales after, the expiration of two years, are irredeemable, and are at all.times irreversible for any irregularity in the assessment or proceedings of the county commissioners or treasurers, should be exempt from the obligation which is required-from the pettiest officer in a township, would be a most unaccountable omission. There can be nothing in reason to distinguish' him from all other officers. Do the words of the Constitution include him, for if he is included by the Constitution, no law can absolve him,' much less can he be absolved by any implication from the silence of the láw. A commissioner’s power is not so great; a Sheriff’s power is not greater ; both are limited to their proper county in the execution of their office ; yet the law has declared, that every Sheriff and every commissioner before he enters on his office, shall beside the usual oath or affirmation of office required by the Constitution, take another and addi-. tional oath to make an impartial selection of persons for jurors, 4 sect, of Act of 29th March, 1805, directing the mode of selecting and returning jurors. Purd.-. 343. It may be difficult to define, with all just precision, what is a public, office, and who is a public officer. Public offices have been defined to be a right to exercise a public employment and trust, and to take the fees and emoluments thereunto belonging. 2 Bl. 36. And as was stated by counsel in Carth. 47.8 ; and in Leigh’s Case, 1 Munf. 475, the rule is, that where one man has to do with-another man’s affairs against his will, and without *392 his leave, that is an office, and he who is in it an officer; and that to every public officer belongs duties to which the officer or his- deputies only are competent, and which he is compel-' lable to perform. The opirtion' of the Court is, that a county treasurer is an officer comprehended by the 8 th article of the Constitution. There are many acts done,by an officer de facto, which are valid. They are good as to strangers, and all those persons who are not bound to look further than that the person is in the actual exercise of the office, without investigating his title ; but here the treasurer though not nominally, is really a party in this action. It is in part an action for- his fees. ' It.must now be considered that the question of. taking the oath was directly before the Court, and that:the Court directly decide, that though he did not take the oath required by the Constitution, he might recover in this action.
The sound distinction as I understand the law is, that the office is void only as to himself, if he has not taken this constitutional official oath, but not as to strangers. 2 Lev. 242. 4 Com. Dig. franchise f. 29. Acts done by persons who have not taken the oaths, are valid as to strangers, for otherwise not only those who no way infringe the law, but those whose benefit is intended to be advanced by it, might be suffering for others faults where they were no wise privy. 5 Cruise. 159 ; and in England^ ah act is past regularly every year, to indemnify persons in office Who have neglected to qualify themselves according to the Test Act.
In The People v. Collins, 7 Johns. 549, the Court decided, that where one comes to his office by colour of title, his acts are valid, when they concern the public or the rights of third persons Who have an interest in the act done. Wherever the act done by an. officer de facto, has been declared to be valid, it is where some third person claims an-interest or title in the act done ; and I -have not been able after much research,.to find any decision, where such act has been considered valid, in an action by the officer de facto claiming for an act done by himself. From the short note of the case referred to by the counsel of the defendant in error, of Thurstan v. Slatford, 1 Lutw. 377, in the note to Fenwick v. Sears’s administrators, 1 Cranch, 268, I at first thought it would be found" that the officer had taken the oath in the time pre *393 scribed, though the fees he demanded had accrued before he had taken the oath, or it might be, that the oath was not tendered ; for it was resolved about that time that the office shall not be void for not taking the oath if it were not tendered, and the tender is traversable ; and the Act of ; 13 Car. 2, says, he shall take the oath when required. But I have traced this case to Salkeldds Reports, 1 Salk. 234, which proves the very contrary of what it is stated to be in Lutwyche. It was a case in the Court of Common Pleas, in assumpsit for five pounds received to the plaintiff’s use,, being fees of the office of the clerk of the dean of Oxfordshire. On non assumpsit it was insisted on,that-the plaintiff had forfeited-his office, by not qualifying himself according to law. They shewed he was admitted in April, and produced the record to prove he had not taken the oath. The plaintiff took a bill of exceptions ; and on a writ of error in the King’s Bench, it was decided to be evidence to be left to the jury., Judgment w.as afterwards giv.en on another point. I do not place entire reliance on either of these reports ; but Salkeld may justly claim equal rank as authority with Lutwyche. Lutkuyche states it to have been decided in the Court of Exchequer, Salkeld in the Common Pleas, and taken by writ of error to the Court of King’s Bench, and there the judgment of the Common Pleas on that point affirmed.- There the.action was for fees actually received, where the business was actually transacted; here the plaintiff in error resists the claim, and will not accept of the act .done, because not done by a legal officer. This case is not satisfactory either way, and in forming my judgment I have dismissed it from my mind.
This distinction between one claiming to be the officer, aryl third persons, is recognised by the Supreme Court of Massachusetts, Fowler v. Bebee and another, 9 Mass. Rep. 231, where Parsons C. J. in the strong and masculine language which distinguishes all his opinions, says, the claimant of office is no-party to’the record, nor can he be legally heard in the discussion of this .plea, although our decision would as effectually decide on his title to the office as if he was a party. This would be judging a man unheard, contrary to natural equity and the policy of law. From considerations like these, has arisen the distinction between the *394 holding of an office de facto and de jure. But if an action should be commenced against one claiming to be Sheriff, for an act which he does not justify but as Sheriff, or if an information should be filed, calling on such a one to shew cause, why he claimed to hold that office, in either case he would be a party, and the legality of his commission might come in question and meet a regular decision. If this be so, and I cannot imagine any fair answer that could be given to this course of reasoning, then, in this case, the person claiming to be treasu*er is before the Court as a party, demanding fees for the exercise of an office, the exercise of which, was the subject of prosecution, by the Commonwealth, and a disregard of the Constitution, the usurpation of an office and the assumption of a name and character which did not belong to him ; for the oath of office cannot be considered as an idle, unmeaning ceremony. This oath is a condition annexed to every public office, the taking of which, is a prerequisite which cannot be dispensed with even by a Legislative Act, much less abolished by a usage, which is an abuse of the Constitution. Usage can only be considered where the construction is doubtful. The maxim that communis error facit jus, cannot be urged either as an excuse or justification of a violation of the plain letter of the Constitution. Of all usages this is the worst. And there is another maxim of the law which applies with all justice to this case, malus usus abolendus est. There can be no stronger obligation imposed on an officer than his oath of office, all human ties are comparatively weak. Had Samuel Riddle accepted these deeds, I will not say that they would not have conveyed him any title. There was a Nisi Prius decision, Miller’s Lessee v. Moore and another, that the want of the proof of the names of the county commissioners being returned to the sessions by the clerk, and that they had taken the oath, would invalidate a sale for taxes. This decision was afterwards disapproved of by other J udges at Nisi Prius. Lessee of Blair v. Caldwell, 3 Yeates, 284. And thus the matter rests between these opinions ; but this I will say, that no prudent man would accept of such conveyance. It leaves a doubt on the title, which having discovered, he might justly say to the person claiming the purchase money, I will not pay it. *395 because you are not a legal officer, have no right to make a sale, receive the money, or .execute a conveyance. It was not too late to make an objection on the trial. '
The alleged defects in the declaration and statement, it is unnecessary minutely to consider. The verdict clearly cured them all. The statement may be rejected as surplusage or. considered as amere bill of particulars, and cannot vitiate the declaration, nor could it cure a'defective title in the declaration. To proceed by statement and by declaration appears to me to be incongruous ; the two modes will not amalgamate. ‘For these reasons, it is the opinion of the Court, that judgment should be reversed, and a venire facias de novo awarded.
Judgment reversed, and a venire facias ' de novo awarded.