## Kingsbury *against* Ledyard.

An officer who performs a public duty by the authority of process issued by those who have jurisdiction of the subject, is not a trespasser, although his appointment and qualification may not be in all respects according to law.

In the appointment of collectors of taxes, the county commissioners have a duty and responsibility which necessarily give the appointment absolutely to them, and they are not bound in all cases to appoint either of the persons returned by the assessors; and if the persons returned by the assessors are in all particulars competent for the office, and the commissioners refuse to appoint either, they may have a remedy to compel their appointment; but a tax-payer cannot take any advantage of a dereliction of duty on the part of the commissioners in such case.

Quære. Is a collector of taxes such an officer as must be qualified by an oath to support the constitution?

ERROR to the Common Pleas of *Wayne* county.

This was an action of trespass by Joseph Kingsbury against Luther Ledyard, commenced originally before a justice of the peace, from whose decision it was brought by appeal into the Common Pleas.

The plaintiff declared against the defendant, " for that the said defendant on the 29th day of October 1838, seized, took, and carried away, one one-horse wagon of said plaintiff, of great value, to wit, of the value of ninety dollars, &c., and converted and disposed of the same," &c.

The defendant pleaded " not guilty with leave to justify," upon which issue was joined.

The plaintiff, proved the taking of the property by the defendant, on or about the 29th of October 1838, and its value.

Whereupon the defendant offered in evidence a warrant from Jacob Faatz and John Mumford, commissioners of Wayne county, to the defendant, as collector of county taxes for Clinton township, for the year 1838, with a duplicate annexed, showing a tax of $1.60 assessed on the plaintiff, said warrant dated 21st of March 1838. To this evidence the plaintiff objected; but the court admitted it, and sealed a bill of exceptions.

The defendant further proved that he had put up written notices of the time and place of sale of the said property at least ten days before the sale thereof, and called *Truman Wheeler*, who testified as follows:

" Since the trial of this cause before the justice, I fell into conversation with Kingsbury, the plaintiff, on the subject. He said

II. — D

he had always been willing to admit that Ledyard had called on him for the tax immediately after he received the duplicate.   He said he considered Ledyard's appointment illegal, as he (the plaintiff) had, as assessor, returned *two* names for collector, and he had been treated improperly by the commissioners.  He mentioned the difficulty between him and Ledyard, and thought the commissioners had treated him badly in appointing Ledyard.   He said the commissioners could not have picked a more obnoxious man to the township."

The plaintiff thereupon offered in evidence the õriginal assessment of Clinton township for the year 1838, made and duly returned by the said plaintiff as assessor of said township, showing the return by such assessor of the names of two citizens of said township, to wit, Charles L. Tenant and Alfred Thomas, for collector ; and offered in connexion therewith to prove that either of said citizens was willing to accept the office of collector, that the defendant had been the collector the preceding year, and that he had solicited the appointment under which he now justifies.

To which evidence the defendant objected, and the court sustained the objection and rejected the evidence.   Whereupon the plaintiff excepted.

The plaintiff then called John Belknap, who testified as follows :  " I was clerk to the commissioners in the fall of 1838.   The duplicate and warrant for that year went into the hands of the collector of Clinton township soon after it issued ; think not more than a week.   This was the corrected duplicate.   I am mistaken —he received the corrected duplicate 18th June 1838.   The corrected duplicate was delivered at that time."

The plaintiff thereupon offered the evidence mentioned in the last bill of exceptions, to which evidence the defendant objected, and the court sustained the objection, and rejected the evidence ; plaintiff excepted.

The witness then further testified—I do not know as Ledyard was sworn as collector.  I never knew of collectors of county taxes being sworn whilst I was in the office as clerk.   I think if Ledyard had been sworn, it would have come to my knowledge. I never heard him say whether he was sworn or not.

John Mumford sworn.   I was one of the commissioners who appointed Ledyard as collector.  He was not sworn as collector to my knowledge.   Collectors were never sworn whilst I was commissioner.   Never heard Ledyard say whether he was sworn.

The plaintiff requested the court to charge the jury,

1. That in an action against one claiming to be *collector* of county rates, and levies for an act which he does not justify, but *as* such collector, his appointment and qualification as collector may be called in question, and he will not be justified if it appear that he was not *duly* appointed or *duly* qualified.

2. That such pretended collector could not be duly *appointed,*

[Kingsbury v. Ledyard.]

unless returned by the proper assessor, in pursuance of section 17th of the Act of 15th of April 1834; or, unless in the event of some of the contingencies enumerated in the 18th section of that Act, or unless the persons returned by the assessors, *or one of them,* were incompetent to serve, and that *exemption* from *liability* to serve on the part of those returned, does not render them incompetent.

3. That such pretended collector could not be *duly qualified,* and could not *justify* as such collector, unless before entering upon the duties of his office, or at least before the act complained of, he took the oath prescribed by the 8th article of the constitution of Pennsylvania.

JESSUP, President,—After stating the leading facts of the case, charged the jury: That in ruling the various points of evidence which have been raised in the cause, their opinion upon the legal questions involved in the cause, had been so fully expressed in favour of the defendant's right under his warrant to levy upon and sell the property of the plaintiff, that it was only further necessary to answer the points submitted by the plaintiff's counsel.

To the first point, the court answer that the warrant of the county commissioners to the defendant was a sufficient appointment, and gave him sufficient authority to collect the tax, and it is not necessary for him to show any of the requirements of the Act of Assembly, requiring assessors to return the names of two persons for collector, to have been complied with; nor can the regularity of his appointment by the county commissioners be inquired into in this action.

To the second point the court reply, that whether any or all of the contingencies happened which are mentioned in the section referred to in this point, is, so far as this action is concerned, immaterial. The commissioners are the judges of that matter, and they must decide it before they issue their warrant for the collection of the tax. This court will not inquire thus collaterally into the regularity of their proceedings, and repeat that the warrant *duly* issued by the commissioners will be all that is necessary for the justification of the person to whom it is directed.

To the third point the court reply, that it is immaterial in this case whether the collector had or had not taken the oath prescribed by the 8th article of the constitution of Pennsylvania.

If the jury believe from the evidence that defendant gave plaintiff notice of the tax, and required payment a proper time before the levy, that plaintiff refused payment, that defendant levied, and advertised, and sold, agreeably to the requirements of the Act of Assembly, the plaintiff is not entitled to recover.

To which charge plaintiff excepted.

Errors assigned:

1. The court erred in admitting the evidence mentioned in the first bill of exceptions.

[Kingsbury v. Ledyard.]

2. The court erred in rejecting the evidence mentioned in the second and third bills of exceptions.

3. The court erred in refusing to charge the jury on the several points, as requested by the counsel for the plaintiff.

4. There is error in the answer of the court to each of the several points on which they were requested by the counsel for the plaintiff to charge the jury.

*Butler*, for plaintiff in error, argued that although the defendant was a collector *de facto*, it was competent for the plaintiff to show that he was not so *de jure*. Two questions arise: 1st. Was the-appointment of the defendant legal? By the 17th section of the Act of 1834, it is made the duty of the assessors to select and return two persons as qualified for the appointment, of whom the commissioners must select one, unless in the excepted cases provided for in the 18th section, where alone any discretion is given them. This case did not come within the exception; each of the persons returned by the assessor was qualified and willing to accept, and the commissioners had, therefore, no power to appoint the defendant. Besides, he had not taken the oath prescribed by the Eighth Article of the Constitution, which is necessary. 7 *Serg. & Rawle* 386. 2d. Was the defendant justified by his illegal warrant? The principle that we cannot collaterally inquire into the validity of an officer's commission, is applicable only to cases arising between third persons; but in an action against an officer himself for an act done by virtue of his commission, he must be able to justify by establishing the validity of it. It is not a collateral but a direct inquiry necessarily involved in the issue. Although a stranger may protect himself under the official acts of one who is an officer *de facto*, yet the officer himself, whenever he becomes a party, must be able to establish his official character *de jure*. 9 *Mass.* 231; 7 *Serg. & Rawle* 392; 7 *Johns.* 539; 2 *Rawle* 139; 11 *Serg. & Rawle* 411; 3 *Binn.* 410; 2 *Binn.* 209; 3 *Cranch* 331; 8 *Watts* 294; 1 *Penn. Rep.* 304; 3 *Whart.* 481; 2 *East* 171.

*Kidder*, for defendant in error. The question presented here is whether any tax-payer can, through the medium of an action against the collector, inquire into the regularity of his appointment by the commissioners? not into the fact of his appointment, for that would be a legitimate inquiry, but into the particular circumstances of it. If the officer set up a claim for his own benefit, and this was the matter in issue, it may be that the legality of his appointment might be inquired into; but there can be nothing clearer, than that he was in the discharge of a public duty, and was an officer *de facto*, into whose commission an inquiry cannot here be made. As a mere question of expediency, can it be that the defendant is to be judged by the regularity or irregularity of the proceedings of the commissioners? if this were so, no one

[Kingsbury v. Ledyard.]

would take the risk of such an appointment. It is sufficient that the defendant acted by colour of legal authority: he cannot be treated as a trespasser. 1 *Chit. Pl.* 183; 3 *Binn.* 404; 3 *Serg. & Rawle* 141; 2 *Rawle* 139; 1 *Penn. Rep.* 297; 9 *Johns.* 135.

*Butler*, in reply, referred to the date of the warrant to the collector, and that of the act complained of, in order to show that the time had elapsed within which the law requires that he shall account to the treasurer for the amount of his duplicate, and, therefore, argued that the defendant was performing an act for his own benefit and not in discharge of a public duty.

The opinion of the Court was delivered by

HUSTON, J.—The case of *Riddle* v. *Bedford County*, (7 *Serg. & Rawle* 386), has been relied on by both parties. That case, and *Keyser* v. *M'Kissan*, (2 *Rawle* 139), in our own reports, state the law as well settled in England, New York, Massachusetts, and this state, that the act of an officer, who is only such *de facto*, is not good where it is for his own benefit, or where he sues to recover for his own benefit; but where he acts for the benefit of strangers or of the public, who know nothing about his title to the office, his acts are valid. We heard much in this case about the danger of the inhabitants being compelled to pay a second time the taxes paid to this collector. The case last cited expressly decides that a bond taken according to law, by commissioners, is good without showing the regularity of their election, or that they took the oaths prescribed by law or decided by the court to be within the constitutional provision; and also that a payment to an officer *de facto* is good without showing that he was appointed and qualified in all respects agreeably to law.

That an officer is not liable as a trespasser, who acts under process issued by those who have jurisdiction, is well settled; see 3 *Binn.* 404; since often recognised in this court.

Indeed the counsel admitted the action could not be supported against the collector if acting for the public, and contended that in this case the tax levied was not for the county but for the sole and exclusive use of the collector; and to show this was cited section third of the Act of 28th of February 1835, (*Stroud's Purdon* 209), making it the duty of the commissioners, within three months after the delivery of a duplicate to a collector, to file a certificate, under their hands and seals, in the office of the prothonotary of the Court of Common Pleas of the county, stating the amount due and unpaid by the collector, which the prothonotary must enter on his docket, and it shall have the effect of a judgment against such collector. A former law, (*Stroud's Purdon* 211,) had authorized the treasurer to issue process to seize the real and personal estate of a collector who was in default; and provision is made in certain cases to sell this property; but it has never

[Kingsbury v. Ledyard.]

been considered that entering such certificate as a judgment, or such seizure of lands and goods of a collector, was a discharge of the inhabitant from his tax; such decision would often be to the great loss of the county; but other Acts of Assembly leave no doubt as to this matter. The several laws are to be considered together as forming one system. The Act of 15th of April 1834, had required every collector to give bond. The first section of the Act of 28th of February 1835, gave commissioners power to appoint, without taking bond or mortgage. The third section above cited allowed or required them to secure the amount not paid over at the end of three months by a lien operating as a judgment; this for the security of the county, not as a discharge to the tax-payers; for by the 44th section of a prior Act of 1834, in full force, " every warrant of a collector, issued as is heretofore provided, shall be effective to authorize him to collect the sums charged in his duplicate during the period of three years from the date of his warrant." Nothing can show more strongly that the tax-payer was not discharged, than this authority given the collector to collect, even by distress and sale, for three years from the date of his warrant. In the same spirit we arrange the provision of the 50th section, which forbids the collector to sue for a tax in any case, and prohibits an alderman or justice from issuing process for him. Now it cannot be believed the legislature would have compelled an officer to collect a debt due to himself, and prohibited him from collecting it by the general law. These provisions show the tax to be still due to, and the property of the county, and to be collected for the county after the three months, if not paid before.

As much was said about the appointment of this collector, and the rights of the citizen, I will notice it. And first: the men returned by the assessor to the commissioners as suitable persons of whom to select one as collector, do not complain; they are not parties before us; they never appeared before the commissioners to ask the appointment; all that was offered to be proved was that either of those citizens was willing to be appointed collector; it was not offered to be proved that either of them was of sufficient property to be trusted with public money, or would have given security. The Act of 1834, required security from every collector. The Act of 1835, permitted the commissioners to appoint without taking security; but they will only do this where they have no doubt of the safety of the money without surety. An inquiry into the debts of an individual, his habits of business, his punctuality, &c., is not always pleasant to the man about whom it is made, or to those whose duty it is to make it. The commissioners may know what the assessor did not know. The assessor may return the names of two " respectable citizens," and the commissioners may not believe them so. The person to be appointed without giving security must own a freehold estate which the commissioners believe to be sufficient security. The

[Kingsbury v. Ledyard.]

commissioners may know of encumbrances, or that the land is held only by articles of agreement, &c.

In short, since the Act of 1835, the commissioners have a duty and a responsibility thrown on them which necessarily give the appointment absolutely to them, uncontrolled by the "shall appoint" of the first law.

The law makes no provision that the commissioners shall serve a notice on the persons nominated by the assessor, and makes no provision for a fee to the person serving such notice, and no fee can be charged where none is given by law. The distance may be a day's ride.

It is not meant that if the persons nominated by the assessor appear and apply for the appointment, and offer security if required, that the commissioners can reject such person from prejudice to him or partiality to another; and if the person so rejected complains, the law will give him redress; will remove the other and put him into the office, and in some supposable cases punish the commissioners. But if the person returned by the assessor never appeared before the commissioners—never informed them he would accept the appointment, and never complained and does not complain that another was selected, no other person can object or be heard, and it matters not whether such other person is actuated by malice and ill-will, or party feelings, or a mistaken and morbid propensity to interfere with other people's acts, and does this under what he calls a wish that all things should be done strictly according to his notions of law. As against and as respects all other persons, the appointment by the commissioners gives authority *de facto* and *de jure*; if it were not so, the act of the commissioners and the reasons of the commissioners may be held good by one jury and not good by another; and if not good by all juries, there is then no officer, for a jury cannot appoint; by a *quo warranto* the one is put out and another put in, and the county or district is not without an officer. The counties and townships of this state are made corporations for certain purposes—does the constitutional provision require that every officer of every corporation shall swear to support the constitution of this commonwealth? The laws creating corporations, and for electing and appointing county, township and corporation officers, prescribe oaths to be taken by certain officers, and are silent as to any oath by others. Does this provision include every thing called an officer? Does it include the crier of the court? He is called an officer of the court. Does it include the clerk of the commissioners? his appointment, like that of court cryer, is noticed in the Acts of Assembly; but hitherto, as far as I can learn, neither have been sworn, nor have many of those holding subordinate borough offices; no one has heard of a collector being sworn, though it may have occurred in some counties.

But it is not necessary to decide it, for we are all of opinion

this collector was collecting a tax for the county, and his acts for others and for the public are good, though only informally appointed.    We do not say he was not appointed strictly according to law.

Judgment affirmed.