## Gregg Township *versus* Jamison.

1. A witness testified that he did not *remember* having made a statement; it was competent to contradict him by evidence that he afterwards declared that he had made the statement.

2. Supervisors before they have been sworn in or given bond are officers *de facto*, and may bind the township, within the month allowed by the act for entering into bond.

3. An officer *de facto* is a person who is such by color of election, though ineligible, or though the office was not vacant.

4. The 3d section of Act of 25th August 1864, allowing a bounty to any person "liable to draft in any ward, &c., who shall furnish, &c., a substitute," embraces those who may have been drafted.

5. The term "liable to draft," refers to the whole process of drafting into service, not merely the drawing of the name from the wheel.

6. The general rule is not to reverse unless the point is distinctly made in the court below, but where the charge is manifestly inadequate to the case and, therefore, necessarily misleads, there will be a reversal.

May 27th 1867. Before THOMPSON, READ and AGNEW, JJ. WOODWARD, C. J., and STRONG, J., absent.

Error to the Court of Common Pleas of *Centre county*.

This was an action of assumpsit to August Term 1865, by William Jamison against the township of Gregg.

The plaintiff declared that he had had mustered into the naval service of the United States a substitute to be credited to the township of Gregg, and paid the substitute a sum exceeding $300 in accordance with a contract made with him, and that the township about that time offered to each volunteer who should be credited upon the quota of the township $300, and that, therefore, the township became liable to pay the plaintiff that sum.

On the trial the plaintiff gave evidence under objection and exception, that pursuant to notice a meeting of taxpayers was held in the township about January 1865, to take into consideration the impending draft, at which it was announced that there

[Gregg Township *v.* Jamison.]

would be a meeting of the citizens the next week to vote on the question. An election was accordingly held, and there was a majority for a bounty.

The regular election for supervisors was held on the 17th of February, and John Ream and John B. Heckman were elected.

At a subsequent meeting, February 28th, it was announced that $500 bounty should be given to each volunteer, and to any one putting in a substitute: $300 to be raised by taxation, and $200 by subscription. John B. Heckman, one of the supervisors elect, was present, who said if the $200 by subscription were raised, the tax should be levied to pay the $300. During the meeting the president announced that the subscription for the $200 had been filled, and that the plaintiff was present at the meeting. Neither of the supervisors elected in 1864 were present. The voluntary subscriptions were all paid. Heckman, the supervisor, testified that he agreed to pay $300 to be raised by taxation, and that Ream, the other supervisor, told him that he agreed to what was done at the meeting. Heckman and Ream gave bond, and were sworn in on the 14th of March.

Defendant gave evidence that at a meeting held about March 8th, the president announced that they had received information that no men could be mustered into the service unless they came from the district, &c., and it was concluded " by the house" that it was no use to put in volunteers ;—the meeting adjourned to the 13th, " for every man to come and receive back their subscription ; they came on that day and drew their money."

John Ream, one of the supervisors, testified that he never agreed " to pay a bounty or levy a tax to pay a bounty." He also said, " I don't know that I said I would assent to what was done at the meetings after I was elected. Heckman and I had no conversation on that subject that I remember."

The plaintiff called Jacob Neese, who under objection and exception testified that Ream said to him, " I never attended any of the meetings, but always said I would agree however they made it." Others testified to the same effect. There were no written points submitted.

Linn, P. J., charged :—

" The evidence pretty clearly establishes that at one of the meetings held by the people of the township after or about the time of the draft, John B. Heckman, one of the supervisors, being present, did offer to raise $300 of the $500 proposed to be given as bounty, by taxation upon the citizens of the township, the remaining $200 being made up by private subscriptions.

" That such an engagement to the plaintiff, amongst others, was made by Heckman publicly in the meeting, seems to be quite distinctly proven by a number of witnesses. But the defendant contends that, notwithstanding you may believe this to be true,

[Gregg Township *v.* Jamison.]

it does not render the township liable, for several reasons : First, Because the offering of a bounty, being an act requiring deliberation, both supervisors must unite in order to bind the township, and that the offer in this case having been made by Heckman alone, it is not binding. It is quite clear from the evidence that Mr. Ream, the other supervisor, was not present at any of the meetings spoken of by the witnesses, and if he did not concur in the offer made by Heckman, the township is not bound by the act of Heckman alone. [But if you find from the evidence that Ream, being informed of what was done at the meetings, and of the offer of bounty on the part of the township made by Heckman, assented to what had been done ; and that afterwards the plaintiff, acting upon the faith of the offer of bounty, procured a substitute, had him credited to Gregg township and paid him $1300, so far as concerns this objection, the township are bound by the offer, and if the plaintiff is embraced in the offer made, he is entitled to recover.]

" What the terms of the offer were, and whether the plaintiff's case falls within it, is referred to you as a question of fact.

" But again, the defendant objects that the supervisors, even if they had united in the offer, could not bind the township by any act of theirs, because at the time the offer was made by Heckman, neither of the supervisors had been inducted into office, and were therefore incapable of doing any valid official act. The evidence shows that, although they had been elected previous to the time at which the bounty was offered, they did not give bond and take the oath of office until the 13th of March 1865. [We instruct you, however, that if they had previously been elected to the office of supervisor, and were recognised and acting as such, as to the plaintiff their acts would be binding upon the township, notwithstanding they were not fully and formally qualified, by entering bail and taking the oath of office until the 13th of March ; which was within one month after the time of their election.]

" Third, It is objected that the plaintiff cannot recover under the 3d section of the Act of 25th of August 1864, because he is not in the category contemplated by the act, that being already drafted at the time the offer was made, he is not ' a person liable to draft.'

" This construction of the act involves too delicate a refinement. We think that it is no objection to a recovery by the plaintiff under this statute that the offer of bounty was not made by the township until after the draft took place.

" If then, you believe that an offer of bounty was made to the plaintiff, by the supervisors, that if he would procure a substitute and have him credited to . Gregg township, he should be paid a bounty of $300 by the township, which offer was concurred in by

[Gregg Township *v.* Jamison.]

both supervisors—or if you find that a bounty of $300 was offered by the supervisors of the township, to assist in filling the quota of the township for that draft, and that after such offer had been made, the plaintiff being a drafted man and a citizen of Gregg township, procured a substitute, and had him mustered into the service of the United States for one year or longer and credited to Gregg township, and paid him a sum exceeding $300—he is entitled to recover the amount of bounty offered, in either case, with interest thereon from the time the substitute was entered to the credit of the township. If neither of these propositions are established by the evidence, your verdict should be for the defendant."

The verdict was for the plaintiff for $337.50.

The defendant took a writ of error and assigned for error the admission of the evidence objected to, and the parts of the charge enclosed in brackets.

*A. Hoy, J. H. Orris* and *C. T. Alexander,* for plaintiffs in error, cited Stockton *v.* Demuth, 7 Watts 39 ;. Brice *v.* Clark, 8 Barr 301 ; Cooper *v.* Lampeter, 8 Watts 125 ; Batteu *v.* The Township of Brandywine, 5 P. L. J. 546; Dull *v.* Ridgeway, 9 Barr 272 ; Riddle *v.* Bedford Co., 7 S. & R. 392 ; Keyser *v.* McKissan, 2 Rawle 139 ; Neal *v.* Overseers, 5 Watts 538 ; Sharpless *v.* The Mayor of Philadelphia, 9 Harris 147 ; Speer *et al. v.* The School Directors of Blairsville, 14 Wright 150 ; Norman *v.* Heist, 5 W. & S. 171 ; Tyson *v.* School Directors of Halifax Township, 1 P. F. Smith 9.

*McAllister & Beaver,* for defendant in error, cited Wertz *v.* May, 9 Harris 279 ; Acts of 25th August 1864, § 3, Pamph. L. 986 ; of 15th March 1865, § 1, Pamph. L. 24 ; Riddle *v.* The County of Bedford, 7 S. & R. 392 ; Keyser *v.* McKissan, 2 Rawle 139 ; Neale *v.* The Overseers, 5 Watts 528 ; Margill *v.* The Hazleton Coal Co., 4 W. & S. 424 ; Brunott *v.* McKee, 6 Id. 514.

The opinion of the court was delivered, July 3d 1867, by

AGNEW, J.—John B. Ream, one of the supervisors of Gregg township, was called for the defence to testify that he had not consented to the payment of bounties, and being asked on cross-examination whether he had not stated he had assented, in presence of Neese and others, replied that he did not remember. Neese was called to prove the conversation, and the defence objected to the evidence as incompetent to contradict Ream, and as immaterial and irrelevant. It was not immaterial or irrelevant, for it went directly to the vital question whether the supervisors had officially offered a bounty to those who would put in substi-

tutes.  Being material, the right exerted on part of the plaintiff
to contradict Ream by his own statements made at other times
and places, referred to in his cross-examination : .1 Stark. Ev.
183 ; 1 Greenl. Ev. § 462 (3.)  It is supposed the case is changed
by the answer of the witness that he did not remember, and Stock-
ton *v.* Demuth, 7 Watts 39, and Brice *v.* Clark, 8 Barr 301, are
cited.  Neither of these cases supports the position.  In the latter,
though not stated, it is manifest from the judge's mode of dispos-
ing of the exception, the inquiries must have related to immate-
rial matters.  But here the witness was called to deny his personal
participation in a matter positively proved by the opposite side, and
vital to the issue, and had followed up his denial by stating a want
of recollection of his own statements to the contrary of his testi-
mony.  Certainly a witness who is afforded an opportunity of
explanation cannot escape from the contradiction of his former
statements, in relation to the same matter, by his want of recol-
lection of them ; otherwise it would lie in his power always to
turn aside the means of contradicting him by merely alleging a
want of memory.  The less credible he is, the more likely would
he be to forget everything likely to impeach his veracity or his
memory.  It is not reasonable to suffer a convenient forgetfulness
to shelter a witness from contradiction, and I think the weight of
authority is against it : 1 Greenl. Ev. note 1 to § 462.

The next important question is, whether the supervisors could
bind the township by their offer of a bounty ?  This offer was made
within one month after their election, but before they had taken
the oath of office, and given the security required by law.  The
court below held them to be officers *de facto,* and capable of bind-
ing the township.  Under the Act of 15th April 1834, § 81,
supervisors are elected " to serve three years."  No provision is
made for holding over until successors are duly qualified,  That
none was intended is manifest from the provision for the township
treasurer and clerk in the same section.  The supervisor is in
office by the election to fill it, but before he enters upon *the duties*
he must take an oath of office : sec. 86.  The Act of 16th March
1860, requiring bond and surety, treats the supervisor as in office,
for his *office* is to be declared *vacant* and the court to appoint
another to fill it if he fail to give the security in one month after
his election.  If any one qualifies he can act for the other till the
court appoints, and if none qualify, the former supervisors can
act till appointment.  Until the month has elapsed, it is manifest
therefore they are supervisors *de facto.*

" An officer *de facto,* says Justice Sergeant, in McGargell
*v.* Hazelton Coal Co., 4 W. & S. 424, seems to be a person
who is such by color of election, though inelegible, or though
the office was not vacant.  Lord Ellenborough defines an officer
*de facto* to be one who has the reputation of being the officer he

assumes to be, and yet is not a good officer in point of law. And Mr. Justice Story, in The Bank of the U. S. v. Dandridge, says, persons acting publicly as officers of a corporation are to be presumed rightfully in office." Lewis, C. J., in Commonwealth ex rel. Bowman v. Slifer, 1 Casey 30, a case in point in this respect, said : " But for the period during which he (Genl. Bowman) performed the duties of the office without having given the *required security*, he was not an officer *de jure*. He was merely an officer *de facto*. His acts were good so far as others are concerned." In Brunott v. McKee, 6 W. & S. 513, it is said that the 86th section of the act of 1834, relating to the oath of office, is only directory, as it does not say that the acts of the officer shall be void for want of compliance with it. See also Kingsbury v. Ledyard, 2 W. & S. 37. Heckman and Ream being supervisors *de facto*, by election and by the expiration of the term of office of the late supervisors, their acts were binding on the township. There is abundant authority for this: Commonwealth v. Slifer, *supra;* Clark v. Commonwealth, 5 Casey 137; McGargell v. Hazelton Coal Co., 4 W. & S. 424; York Co. v. Small, 1 W. & S. 315; Neale v. Overseers, 5 Watts 538; Keyser v. McKissan, 2 Rawle 139; Riddle v. County of Bedford, 7 S. & R. 386.

Another question in the court below arose upon the 3d section of the Act of 25th August, 1864. That section allows a bounty to " any person liable to draft in any ward, township, or district, (who) shall furnish and have mustered into the service of the United States for the term of one year or longer, a suitable *substitute*, credited to the ward, township, or district." The plaintiff in error thinks the act was intended to embrace only *enrolled* men, not yet drawn from the wheel, who voluntarily put in substitutes— that after his name is drawn the person is drafted and not " liable to draft," in the words of the act. This is too narrow a view. The term liable to draft refers to the whole process of drafting into service, and not merely to the drawing of the name from the wheel. This is merely a preliminary, for whether the person whose name is drawn will be actually drafted depends on his position upon the list of names drawn and the exemptions allowed ; 50 per cent. be added in the drawing to the *quota* or number to be called into service. We must consider the purpose of the act also, which was to allow a bounty to him who had furnished a substitute, and thereby procured a credit for the township upon its military *quota*. The substitute, himself, is a volunteer, and when he has been paid by the employer, and the township has thus secured a credit, it was thought right that the person who had paid him should be refunded. In merit the substitute had the qualification of the volunteer, and in benefit the township had the advantage of the credit and the payment of the employer. The term "liable to draft," was to limit the liability of the township, other-

[Gregg Township *v.* Jamison.]

wise it might be called on to pay bounties for substitutes beyond its *quota*. Thus far we think the court below was right in its rulings.

But the sixth assignment of error brings up a question not submitted to the jury, and yet one which the jury, on the evidence, was bound to pass upon; and which would, if found for the defence, have been fatal to the plaintiff's right to recover. The general rule of this court is not to reverse, unless the point is distinctly made in the court below; but there are cases where a charge is manifestly inadequate to the case before the court, and which therefore necessarily misleads.

This case is one of that character; and as a number of other cases are said to be depending on the decision of this, it would be unjust to the township to suffer this case to be decided upon a partial presentation of it. The evidence shows that it was resolved at the public meeting, which Heckman, the supervisor, attended, to pay those who would procure substitutes a bounty of $500, of which $300 should be paid by the township and $200 by subscription. The defence proved that, at an adjourned meeting which the plaintiff attended, owing to information brought from Harrisburg in reference to substitutes, the conclusion was come to that it would be useless to put in volunteers. The president announced publicly that every one must shift for himself, and the meeting adjourned over till Monday for the purpose of paying back the subscriptions, and that they were refunded. This was on the 11th of March, and it was not until the 8th of April following the plaintiff put in his substitute. There was no evidence that the supervisors took any step after this meeting to pay that portion of the $500. The township was to pay, while Ream, the other supervisor, took no personal part in offering the bounty, and certainly afterwards repudiated the offer on his own part. From this evidence the jury, most probably, must have drawn the conclusion that the offer of a bounty was withdrawn, and that Jamison, the plaintiff, did not rely on it in putting in his substitute. The court failed to submit this aspect of the case to the jury. From the manner in which the case was submitted, especially in the last paragraph, they must have thought that the withdrawal of the offer of the bounty with Jamison's knowledge, and before he put in his substitute, made no difference. In this there was error—the court ought to have left it to the jury to find whether the offer was withdrawn; and if so withdrawn, to have instructed them to find for the defendant.

The judgment is therefore reversed, and a *venire facias de novo* awarded.