## Commonwealth *v.* Zec, Appellant.

*Criminal law—Murder—Trials—Verdicts—Motion for continuance—Refusal—Defenses—Self-defense—Shooting to scare—Deadly weapon—Presumption—Act of March 31, 1860, Sec. 54, P. L. 427.*

1. Where a jury has rendered a verdict of "guilty of murder in the first degree, but recommend the mercy of the court," the latter clause is surplusage and does not vitiate the verdict; so far as relates to the law of the case it is without effect.

2. In a homicide case the refusal of a continuance moved for because of the alleged inability of defendant to procure witnesses did not appear to have harmed defendant where, after the trial, counsel searched for additional witnesses for nine months and found but one witness, who only alleged that she had seen a quarrel between defendant and deceased prior to the killing and at a different place therefrom, who was not present at the killing, and whose other testimony would be incompetent, particularly where it appeared that such witness was known to defendant from the time of the homicide and no reason was given why she was not produced at the trial.

3. Where in such case, two terms elapsed before the trial of the defendant, the fact that he was not discharged at the expiration of the second term, as requested by him, was not reversible error, where the postponement of the trial was granted at his application, because of the fact that he was confined to a hospital recovering from the amputation of his leg.

4. The two-term rule never applies where the delay in reaching trial is at the application of the defendant or results from his dis-

ability, misconduct or assent. Section 54 of the Act of March 31, 1860, is a habeas corpus act to relieve a defendant from unjust imprisonment and not to shield him from just punishment.

5. It is not reversible error in a trial for murder for the trial judge to refuse to order the district attorney to call all the witnesses who were present at the commission of the homicide.

6. Where a question improperly rejected is later answered in full, the error is cured.

7. It is competent for a defendant in a homicide case to testify to the state of his own mind as to intent, fear, etc., where that is material and an open question; but it is not competent for the prisoner to testify simply that he had a secret undisclosed reason to fear the deceased.

8. Where one intentionally uses a deadly weapon upon a vital part of the body of another, there is a legal presumption of an intent to kill which cannot be rebutted by the assailant's own testimony that he did not so intend, but whether the assailant intended to use the weapon upon a vital part of the body is a question of fact, and he may deny that he intended so to use it, or that he intended to take life.

9. Where, on the trial of an indictment for murder, it appeared that deceased, defendant and others had met at defendant's boarding house, that they all had been drinking, that defendant and deceased had quarreled, that deceased left the house and was followed by defendant who shook hands with deceased and his companions, bade them good night, and then drew his revolver and shot deceased, killing him, and then attempted to escape arrest by assaulting an officer and fleeing, and where defendant testified that he did not kill deceased in self-defense, but that he fired in the air to frighten him and killed him by mistake, the case was properly submitted to the jury, and a verdict of guilty of murder of the first degree will be sustained.

*Practice, Supreme Court—Appeals—Assignments of error.*

10. An assignment of error embracing four separate rulings of the trial court, to each of which a bill of exceptions was sealed, is in flagrant violation of Rule No. 26 and cannot be sanctioned even in a capital case.

11. An assignment of error which specifies that the charge was inadequate must quote the charge.

Mr. Justice SIMPSON dissents.

Argued June 3, 1918. Appeal, No. 72, Oct. T., 1918, by defendant, from sentence of O. & T. Beaver Co., June Sessions, 1917, No. 9, on verdict of guilty of murder of

the first degree, in case of Commonwealth v. Lazar Zec. Before Brown, C. J., Moschzisker, Frazer, Walling and Simpson, JJ. Affirmed.

Indictment for murder. Before Corbet, J., specially presiding.

The opinion of the Supreme Court states the facts.

The verdict was as follows: "Guilty of murder in the first degree, but recommend the mercy of the court."

The court subsequently imposed sentence of death. Defendant appealed.

*Errors assigned* were in imposing sentence of death, in refusing a new trial, in refusing a continuance, in refusing to discharge the prisoner under the two-term rule, rulings on evidence, and instructions to the jury.

*F. G. Moorhead,* with him *H. W. Leonard* and *L. M. Sebring,* for appellant.—The formalities necessary in imposing sentence were not complied with.

The jury should have been instructed, after the rendition of their verdict, that the recommendation of mercy would have no avail: State of Iowa v. John Kernan, Appt., 135 N. W. 362.

The motion for a new trial, based on the ground of after-discovered evidence, should have prevailed: Cline v. State, 71 S. W. 23.

Evidence of prior difficulties between the deceased and the defendant should have been admitted: Com. v. Garanchoskie, 251 Pa. 247; Com. v. Wooley, 259 Pa. 249.

The instructions to the jury upon the law of self-defense were erroneous.

*Louis E. Graham,* District Attorney, and *Frank H. Laird,* for appellee, filed a paper book, but presented no oral argument for appellee.

Opinion by Mr. Justice Walling, July 17, 1918:

This appeal by defendant, Lazar Zec, is from judgment upon conviction of murder of the first degree. He and

Novak Zinaic, the deceased, were fellow-countrymen, and, on the evening of October 28, 1916, met with other acquaintances at the house where defendant boarded in Woodlawn, Beaver County. There was drinking, in which the deceased and defendant joined; the latter, however, says he knew what he was doing. During the evening, angry words passed between them, and the deceased spoke of the defendant as "a pig," to them a deeply offensive epithet. About 11 o'clock, the proprietor suggested that those not boarding at his house should depart; the deceased, with a companion, named Paunik, left and the defendant followed and caught up with them and the three walked along the street for some distance when, according to the Commonwealth's evidence, the defendant shook hands with them, bade them good night and immediately drew his revolver and fired two fatal shots through the body of Zinaic, while he was standing quietly on the street. Defendant returned to his boarding house, admitted the shooting and was going away when he was arrested. After attempting to shoot the officer, defendant threw his revolver into a coal box where it was found loaded with three cartridges and two empty shells. At the same time, while trying to escape, he was shot by the officer. This resulted in the amputation of his left leg and kept him in the hospital until near the time of his trial the following June. A loaded revolver was found in the hip pocket of the deceased, and the defendant, who offered no testimony but his own, said, inter alia, that the deceased assaulted him at the boarding house and again as they were about to part on the street, at which time he saw a revolver in Zinaic's pocket and saw him make a motion as if to draw it, and through fear he (defendant) fired the two shots in the air.

The verdict was, "Guilty of murder in the first degree, but recommend the mercy of the court." In our opinion the latter clause was surplusage and did not vitiate the verdict, it being without effect so far as relates to the law of the case: State v. Bennett (Supreme Court, South

Carolina), 18 S. E. 886, 887; and see also the opinion of Chief Justice CAMPBELL in the well-considered case of Penn v. The State, 62 Miss. 450, 473. The defendant's crippled condition naturally appealed to the sympathy of the jury and may have inspired the recommendation to mercy. Thereafter, the court allowed the defendant the unusual privilege of filing additional reasons for a new trial from time to time for nine months and granted every indulgence consistent with the due administration of justice. We have also given this case consideration on two occasions, and, while we find no reversible error, the recommendation to mercy may still be considered on the question of executive clemency.

There is nothing in the action of the trial court in refusing the motions for a continuance and a new trial that indicates such an abuse of discretion as to require a reversal of the judgment. The case was not called for trial until nearly eight months after the homicide, meantime defendant was confined in a hospital. Fifteen days before the trial, at his request, the court appointed counsel to defend him. The reason urged for the continuance was inability to procure witnesses; yet counsel continued zealously their search for additional evidence for nine months after the trial and only found one witness and all she claims to have seen, was the trouble at the boarding house, although she makes the incompetent assertion that defendant informed her that his brother had been murdered by the deceased twelve years before, in the old country. Manifestly the discretion of the court was not abused in refusing a new trial on that ground. And, as this witness lived at Steubenville, Ohio, and was known to defendant from the time of the homicide, no good reason appears why she was not produced at the trial.

There is no merit in the complaint that the court erred in refusing to discharge the defendant under the two-term rule. That rule never applies where the delay is at the application of the defendant or results from his disability, misconduct or assent: Commonwealth v. Jailer

of Allegheny County, 7 Watts 366; Commonwealth v. Sheriff, 16 S. & R. 304. Aside from that, the Act of February 18, 1785, reënacted by Sec. 54 of the Criminal Procedure Act of March 31, 1860, P. L. 427 (Stewart's Purdon, Vol. II, p. 1818), is a habeas corpus act to relieve a defendant from unjust imprisonment and not to shield him from just punishment: Commonwealth v. Supt. of County Prison, 97 Pa. 211, 214; Clark v. Commonwealth, 29 Pa. 129. It is remarkable that on the same day the defendant moved for a continuance because of lack of time to secure witnesses, he also moved for his discharge because of the duration of his imprisonment.

The trial court may, but is not bound to, order the district attorney to call all the witnesses who were present at the commission of a homicide: Commonwealth v. Deitrick, 221 Pa. 7; Commonwealth v. Keller, 191 Pa. 122.

The statement of defendant that he had been driven from Steubenville, Ohio, by the deceased's brother had no bearing on the case and was properly stricken from the record, especially as there was no offer to show any concerted action between the brothers.

The eighth assignment of error is a flagrant violation of our Rule No. 26, in that it embraced four separate rulings of the trial court, to each of which a bill of exception was sealed. Such practice cannot be sanctioned even in a capital case. However, we have examined each of the questions grouped in this assignment and find them without substantial merit. Where a question, improperly rejected, is later answered in full, the error is cured. It is competent for a witness to testify to the state of his own mind as to intent, fear, etc., where that is material and an open question (see Commonwealth v. Wooley, 259 Pa. 249; Commonwealth v. Hazlett, 14 Pa. Superior Ct. 352, 369), but it is not competent for the prisoner to testify simply that he had a secret undisclosed reason to fear the deceased.

Where one intentionally uses a deadly weapon upon a vital part of the body of another, there is a legal presumption of an intent to kill which cannot be rebutted by the assailant's own testimony that he did not so intend.  See McCue *v.* Commonwealth, 78 Pa. 185, 191; Commonwealth *v.* Drum, 58 Pa. 9, 17; Cathcart *v.* Commonwealth, 37 Pa. 108, 112.  But whether the assailant intended to use the weapon upon a vital part is a question of fact and he may deny that he intended to so use it, or that he intended to take life.

We find no error in what the court said on the question of self-defense; in fact, defendant does not claim that he killed Zinaic in self-defense or that it was necessary for him to do so, but says he fired in the air to frighten him.  Defendant's own evidence fails to make a case of self-defense.  A man cannot follow another out of a house and along the street and then shoot him to death and escape punishment because the other man had a gun in his pocket which the accused says he thought he was about to draw.

The criticism that the charge, as a whole, was inadequate is not well founded; aside from that the charge is not quoted in the assignment.

The judgment is affirmed and it is ordered that the record be remitted to the Court of Oyer and Terminer for the purpose of execution.

DISSENTING OPINION BY MR. JUSTICE SIMPSON:

Defendant was convicted of the murder of Novak Zinaic at Woodland, Beaver County, Pennsylvania, on October 28, 1916.  It is said that the region is largely peopled by uneducated foreigners, who invariably carry concealed deadly weapons; that murders are common; and that when a quarrel ensues the question as to who shall be the murderer and who is murdered, is, largely, if not wholly, determined by the ability to draw such a weapon quickly.  Those facts call for stern, repressive measures; but they likewise give pause, when a murder

is being considered, lest a necessary preparedness be mistaken for premeditation.

Deceased and defendant were Croatians, coming from the same immediate region in the old country, and it is said that "over there" deceased killed defendant's brother, and had threatened to kill defendant, if defendant did not first kill him. On the evening of the murder they met at the boarding house of the deceased. They drank a quantity of liquor, but not enough, defendant says, to prevent him from knowing what he was doing. They had words, deceased calling defendant a pig, probably the most opprobious epithet applied by these people. They were ordered out of the house, and met again in the street, where, apparently, a reconciliation took place, deceased withdrawing the epithet, the parties shaking hands, and, with a friend of deceased, walking down the street together. When they were parting, deceased shook hands with his friend, and, turning to shake hands with defendant, disclosed a loaded revolver in his (deceased's) pocket, which defendant says, deceased made a motion as if to draw; whereupon defendant shot him twice, killing him instantly. Defendant then ran to his boarding house, intending to leave the place, but a policeman came up, and the defendant, refusing to stop when ordered so to do, was shot in the leg, resulting later in an amputation thereof.

While in the hospital he was indicted, and, shortly after he was in a condition to be removed, was placed upon trial. On account of his poverty the court, fifteen days before the trial, assigned counsel to defend him. An interpreter was required to enable them to understand each other, and it is said that that fact greatly restricted the preparation of the defense. At the trial defendant asked for a continuance upon the ground of inability to locate certain material witnesses during the short time since he had had counsel. The district attorney stated that he also had unsuccessfully tried to find those witnesses, whereupon the court refused the

continuance.  After the trial one of them was located at
Steubenville, Ohio.  She made a statement to the effect
that she knew of the above-mentioned threat, and that de-
fendant had told her of the killing of his brother by the
deceased.  This statement was made the basis of a mo-
tion for a new trial on the ground of after-discovered
evidence, particular stress being laid on the fact that
this evidence would have strongly corroborated the de-
fendant, who was the only witness for himself at the
trial.  The new trial was refused.

The verdict of the jury was: "Guilty of murder in the
first degree, but recommend the mercy of the court."
The other judges who heard the argument of this appeal,
are of opinion that the words "but recommend the mercy
of the court" may be treated as surplusage, especially as
they are intended only to inform the trial judge of the
fact that, in the opinion of the jury, there are extenu-
ating circumstances which should relieve the prisoner
from the maximum penalty for the offense charged.  That
is undoubtedly true; but extenuating circumstances are
a very vital factor in a murder case, and not unusually
reduce the grade of the offense below that of murder in
the first degree.  Moreover, it is equally true that such a
verdict is generally, if not always, a compromise, en-
tered into for the purpose of overcoming the doubts of
one or more of the jury regarding the guilt of the pris-
oner.  But such doubts, if reasonable, especially in a
murder case, ought to result either in an acquittal or in
a reduction of the grade of the offense; and when we re-
member how difficult it is for the average juryman to
draw a distinction between that which is wilful, deliber-
ate and premeditated, and that which is only wilful and
deliberate, it is evident that a verdict, containing a recom-
mendation to mercy, may well have been reached be-
cause of a misunderstanding regarding the charge of the
court.  When a human life is at stake it ought to be made
certain that no such misunderstanding exists; and, in
my opinion, therefore, the trial judge should have re-

fused to receive the verdict rendered, should have recharged the jury as to the grades of murder, and should have told them that if they believed the defendant was guilty of murder in the first degree they should so find, without any addendum to their verdict.

It is said in the opinion of the majority that "the defendant's crippled condition naturally appealed to the sympathy of the jury and may have inspired the recommendation to mercy." That of course may be true, but there are other possibilities which would at least equally well explain the recommendation. Indeed, the suggestion itself emphasizes the fact that there is a doubt as to what the jury did mean, and as I share in that doubt I dissent from the opinion and judgment entered in this case.

Since the foregoing was written the cases of Penn v. The State, 62 Miss. 450, and State v. Bennett, 18 S. E. 886 (South Carolina), have been added to the opinion of the majority, as bearing out the claim that the words "but recommend to the mercy of the court" may be treated as surplusage. In the former the verdict was "Guilty as charged in the indictment and plead the mercy of the court." After that the opinion shows that "The jury was polled and each juror declared the verdict his. This was after the judge had announced that he could show no mercy. Surely if the subject of punishment and a desire to save the prisoner from the penalty of death had occupied the minds of the jurors, some of them would have made it known." The court there did what the court below here should have done, and the polling was, of course, a verdict without the recommendation.

In State v. Bennett, supra, the verdict was "guilty with a recommendation to mercy." The assignment alleged error in not granting a new trial for that reason and also because of an affidavit of a juror as to what he meant by a concurrence in the verdict. It was dismissed because "in a court having jurisdiction only for the correction of errors of law, such recommendations can have

1918.]                    Dissenting Opinion.

no effect upon the verdict regularly and solemnly rendered." As a refusal of a new trial is discretionary and not an error of law, the assignment of course was bad.

Neither of these cases is controlling here, and neither really affects the argument and conclusion of this dissent.