## Commonwealth ex rel. Matulek v. Abbott, Warden.

*Extradition—Habeas corpus—Arrest—Constitution, U. S., art. iv., sect. 2 —Preliminary arrest—U. S. Rev. Stat., sect. 5278—Acts of May 24, 1878, and June 4, 1879, P. L. 95.*

1. The arrest of a fugitive from justice upon a warrant secured from a magistrate prior to securing a warrant of extradition is in no sense a part of the extradition proceeding proper, authorized by article iv, section 2, of the Constitution of the United States and Rev. Stats., § 5278.

2. The source of the right to make such preliminary arrest being intrastate, the State legislature may regulate and limit it in any manner it may see fit, or may, if it sees fit, wholly abrogate it.

3. The right of the demanding state to demand extradition is based on the Federal Constitution, and the State legislature, although it may regulate the procedure for the enforcement of the right in so far as such regulation is not inconsistent with the Federal Constitution, cannot in any manner limit or revoke such right.

4. The provision of the Act of May 24, 1878, § 5, P. L. 137, to the effect that a prisoner arrested on a preliminary warrant shall not be held for a longer period than ninety days, is to prevent the wilful restraint of the prisoner's liberty.

5. The act has no application where the prisoner has caused delay by opposing securing the warrant of extradition.

6. Where a prisoner is held awaiting the arrival of an extradition warrant, he must seek his release by writ of *habeas corpus.*

7. If such prisoner has failed to secure his release before the arrival of the extradition warrant, his application to be released thereafter is too late.

8. The court may release him from the custody resulting from the preliminary warrant, but it has no power to release him from the custody resulting from the warrant of extradition.

9. The Act of May 24, 1878, § 4, P. L. 137, limiting the court's inquiry upon writs of *habeas corpus* to the question of identity, has apparently been treated by the appellate courts of Pennsylvania as unconstitutional.

10. The extradition warrant itself is *prima facie* evidence that the prisoner is identified as the person named therein and is a fugitive from justice.

1. Where the prisoner under an extradition warrant in *habeas corpus* proceedings sets up an *alibi,* thereby raising an issue of fact, the issue can only be determined by the courts of the demanding state.

*Habeas corpus.* C. P. Washington Co., Feb. T., 1923, No. 107.

*Acheson & Crumrine* (with them *Charles J. Schuck* and *John D. Gardner*), for relator.

*Isaac W. Baum* (with him *William S. Wilkin, J. B. Handlan* and *J. J. Conniff*), for respondents.

CUMMINS, J., Feb. 5, 1923.—The relator, Mike Matulek, was, on Sept. 6, 1922, arrested on a warrant issued by a magistrate and committed to the county jail of this county as a fugitive from justice, where he has since been confined. Subsequently a warrant for the extradition of the relator, issued by the Governor of Pennsylvania, at the request of the Governor of West Virginia, was, on Dec. 9, 1922 (more than ninety full days after the relator's commitment), lodged with the sheriff of this county; whereupon the relator, having been brought before this court, agreeably to the provisions of the Act of May 24, 1878, P. L. 137, petitioned for and caused to be issued a writ of *habeas corpus*, and after hearing thereon had, it is now claimed by the relator that he should be discharged from custody for the three following reasons: First, because the warrant of extradition was not received by the sheriff within ninety days (exclusive of the day of arrest) after the commitment of the relator; second, that there was not sufficient proof that the relator was the same person as named in the requisition; and third, that, under the evidence, it had not been established that the relator was a fugitive from the justice of the State of West Virginia. The last two reasons involve ques-

4 D. & C.

tions of fact to be found from the evidence, and the first, the fundamental law of interstate extradition, requiring a review of the constitutional provisions, Acts of Congress and acts of assembly relating thereto.

It is provided by our Federal Constitution (art. IV, § 2, see 1 Purd., 13th Ed., 63) that: "A person charged in any state with treason, felony or other crime, who shall flee from justice and be found in another state, shall, on demand of the executive authority of the state from which he fled, be delivered up to be removed to the state having jurisdiction of the crime." Pursuant to this constitutional provision, Congress, by section 5278 of the Revised Statutes, enacted that: "Whenever the executive authority of any state . . . demands any person as a fugitive from justice of the executive authority of any state . . . to which such person has fled, and produces a copy of an indictment found or an affidavit . . . charging the person demanded with having committed treason, felony or other crime, certified as authentic by the governor . . . of the state . . . from whence the person so charged has fled, it shall be the duty of the executive authority of the state . . . to which such person has fled to cause him to be arrested . . . and to be delivered to such agent [of the demanding state] when he shall appear."

Our State legislature, by Act of May 24, 1878, P. L. 137, entitled "An act to regulate proceedings under requisitions upon the Governor of this Commonwealth for the apprehension of fugitives from justice," as amended by the Act of June 4, 1879, P. L. 95, undertook to regulate the procedure in interstate extradition proceedings had in this State. Section 1 of this act makes it the duty of the Governor, upon requisition made upon him by the governor of another state for the arrest of a fugitive from justice (accompanied with a certified copy of the indictment or information from the authority of such other state, charging such person with any crime in such state), to issue to the proper sheriff an extradition warrant for the arrest of such fugitive. The 2nd section provides for at least a hearing, and, in addition, affords the prisoner an opportunity to contest his extradition by writ of *habeas corpus.* The 3rd and 4th sections of the act prohibit the taking of a prisoner from the State without requisition and hearing; and the 5th section, as amended, provides: "That nothing in this act shall be construed to prevent the sheriff of any county, or chief of police of any city, or other person, to cause the arrest of any person or persons, upon information of the offence or crime committed in another state, and that a warrant has there been issued for the arrest of the said party or parties or has there been indicted: Provided, the officers of any town, city or county, or authorities of such other state or territory, shall procure a requisition and have the same presented to the Governor of this Commonwealth within ninety days after the arrest shall have been made, and the prisoner or prisoners, upon being arrested or detained, shall be brought before a court or judge in the manner and for the purpose provided in the 2nd section of this act: Provided, such person shall not be committed or held to bail for a longer period than ninety days, exclusive of the day of arrest, at the expiration of which time, if the sheriff has not received the requisition or warrant from the Governor of this Commonwealth, then the person or persons so arrested and detained shall be discharged from custody."

It is now claimed on behalf of the relator that, having been committed and held for a longer period than ninety days (exclusive of the day of his arrest) before a warrant of extradition had been lodged with the sheriff or jail warden, he is now entitled, under section 5 of this act, to be released from custody, notwithstanding the fact that at the time of petitioning for his

release the Governor's warrant had later arrived and was then in the hands of the sheriff. The 5th section of this act must not only be construed in conjunction with the entire act, but the act itself must likewise be considered as a part of our entire system governing interstate extradition.

It is, first of all, important to observe that the arrest of a fugitive from justice upon a warrant secured from a magistrate, prior to the securement of a warrant of extradition, is in no sense a part of the extradition proceeding proper, authorized by article IV, section 2, of the Federal Constitution, and the Act of Congress passed pursuant thereto. The authority for such preliminary or provisional arrest is found in the common law of this State (Com. ex rel. Hay *v.* Rhodes, 8 Dist. R. 732; Com. *v.* Wilson, 1 Phila. 80; 25 Corpus Juris, § 19, 260), and is only recognized and to some extent regulated and limited by section 5 of the Act of May 24, 1878, as amended. The source of the right to make such preliminary or provisional arrest being intrastate, it follows that our State legislature may regulate and limit it in any manner it may see fit, or may, if it so desires, wholly abrogate it. The right, however, of a demanding state to interstate extradition is created by the Federal Constitution, and it, therefore, as clearly follows that our State legislature, although it may regulate the procedure for the enforcement of such right, in so far as not inconsistent with the Federal Constitution and Acts of Congress, cannot in any manner limit or revoke this right. The constitutional provision in question does not even contemplate an arrest before the procurement of the warrant of extradition, but expressly provides for an arrest following the procurement of such warrant. And this is likewise in a sense true of the Act of May 24, 1878, which refers to the right to such common law preliminary or cautionary arrest, apparently in the main to prevent a revocation of such right by implication. To hold that the warrant of extradition issued by the Governor was nullified before it reached our sheriff would most certainly be giving to this act of assembly a construction which would render it unconstitutional. When the period of ninety days had elapsed, the relator might be, under some circumstances, entitled to be released from custody resulting from such preliminary warrant of arrest, under the Act of May 24, 1878, but it does not follow that he would be entitled to be released from a custody then likewise resulting from an extradition warrant at that time also in the hands of the sheriff. It often happens that a prisoner, as in this case, may be held by virtue of several warrants lodged with the jailer or officer in whose custody he may at the time be. Even had the relator been actually released when the extradition warrant arrived, clearly there would have been nothing to prevent the sheriff from apprehending him, and it would have been his duty so to do.

Apart from the constitutional question involved, we do not believe that this proviso clause in section 5 of the act should be construed in the manner contended for by counsel for the relator, even as respects a custody resulting solely from the preliminary or cautionary arrest. While there is no direct authority on the subject, an almost analogous situation arises under section 64 of the Criminal Procedure Act of March 31, 1860, P. L. 382, 427, which act, in terms that are unmistakably mandatory, requires a prisoner to be released after the first term, if not tried, upon bail, and after the second term to be discharged. This section of the Criminal Procedure Act is referred to by Mr. Justice Simpson in Com. *v.* Zec, 262 Pa. 251, 256, as a *habeas corpus* act. Yet, notwithstanding the mandatory language used in this act, it has been uniformly held that its purpose was merely to prevent the wilful and repressive

4 D. & C.

restraint of one's liberty, and that it did not include cases where there had been unavoidable delay: Com. v. Pulte, 14 Phila. 398, 399; Com. v. Zec, 262 Pa. 251, 256; Com. v. Allegheny County Sheriff, 16 S. & R. 304; Clark v. Com., 29 Pa. 129, 135; Com. v. Jailer of Allegheny County, 7 Watts (Pa.), 366; Com. v. Daniele et al., 2 Wash. Co. Repr. 217.

A somewhat analogous situation may arise under our Practice Act of May 14, 1915, § 12, P. L. 483, 485, which requires a defendant to file an affidavit of defence within fifteen days after service upon him of plaintiff's statement, upon failure to file which plaintiff is entitled to judgment by default. It is too late, however, notwithstanding this legislation, to enter judgment for default after an affidavit of defence has been actually filed, although filed long after the expiration of the fifteen-day period: Fuel City Manuf. Co. v. Waynesburg Products Corp., 268 Pa. 441. See, also, Bordentown Banking Co. v. Restein, 214 Pa. 30; Gillespie v. Smith, 13 Pa. 65; Barndollar v. Fogarty, 203 Pa. 617, 621. In the last cited case (at page 621), it is said, in reference to similar requirements: "They are mandatory only to the extent of giving the plaintiff the . . . right to act after the claimant is in default, and if he fails to act during the continuance of such default, he is by his silence inviting the claimant to act. When the latter does act under such invitation, it is then too late to say he had no right to act and that what he did must . . . be treated as invalid." In Gillespie v. Smith, 13 Pa. 65, the Supreme Court remarks that where the party entitled "does not enforce his right at the first moment, [it] shows that he has not suffered by delay, and the signing of judgment is not imposed as a penalty." The sheriff and jail warden are both but ministerial officers, and neither would have had authority to discharge the relator without an order of court: In re Bonofilo, 18 Dist. R. 64. Such order was apparently deemed to be necessary (as would appear from the decrees entered) in Com. ex rel. Hay v. Rhodes, 8 Dist. R. 732, and Com. ex rel. Schneider v. Chess, 21 Dist. R. 523. It might very well happen, as it frequently does (e. g., in Thaw's Case, 46 Pa. C. C. Reps. 14, 26 Dist. R. 477), that the granting of the warrant by the Governor may be opposed by the prisoner himself, resulting in more than ninety days' delay, and yet, in such case, it could hardly be contended that the prisoner would be entitled to be released from custody resulting from such preliminary warrant. But what authority would the jailer have to pass upon such questions of fact? Clearly a person held on such a warrant, even when entitled thereto, must seek his release by writ of habeas corpus. The relator, having failed to secure his discharge before the arrival of the extradition warrant, is now too late, or, perhaps, it might be more correct to say that while entitled to be discharged from the custody resulting from the common law preliminary warrant, he is not, however, entitled to be released from the custody resulting from the extradition warrant under which he was brought before this court.

That brings us to a consideration of the two questions of fact involved: First, the relator claims that sufficient evidence has not been produced from which it may be found that he is the same person named in the extradition warrant. The testimony of William S. Wilkin, Esq., District Attorney of Brooke County, West Virginia, as to the identity of the relator and the Mike Matulek mentioned in the extradition warrant, was secondary evidence, being clearly hearsay, and for that reason the motion of counsel for the relator must prevail and this evidence be treated as stricken from the record. The testimony of Harry F. Gilg, as to identity, was likewise incompetent for the same reason. The relator, however, in his petition for his writ, alleges that

he "is informed . . . and avers that he, together with a large number of other persons, has been indicted in the Circuit Court of Brooke County, charged with the murder of H. H. Duvall, Sheriff of Brooke County, . . . on July 17, 1922." By the certified copy of the indictment accompanying the extradition warrant, it appears that one, and only one, Mike Matulek was therein indicted, charged with this offence. The witness, Alfred Myers, testified that he appeared before the grand jury of Brooke County, West Virginia, which found said indictment, and testified against one Mike Matulek, and that the Mike Matulek against whom he there testified was the relator. The last witness, being a self-confessed accomplice, his testimony must be looked upon with suspicion, but taken in conjunction with the other warranted inferences, we have concluded that there is sufficient evidence in the case to justify the conclusion that the relator and the Mike Matulek named in the extradition are one and the same person.

The remaining question to be disposed of is whether the relator is a fugitive from the justice of the State of West Virginia. Section 4 of our Act of May 24, 1878, undertakes to limit the court's inquiry, upon writs of *habeas corpus*, to the question of identity. Our State Constitution, however, provides that "the privilege of the writ of *habeas corpus* shall not be suspended unless when, in cases of rebellion or invasion, the public safety may require it" (article I, section 14, of Constitution), and apparently by common consent this provision in our act is treated as unconstitutional: Com. v. Superintendent of County Prison, 220 Pa. 401; Com. v. Cooke, 55 Pa. Superior Ct. 435. And see Roberts v. Reilly, 116 U. S. 80, 94. The production of an extradition warrant, in the first instance, raises a presumption that the relator is a fugitive from justice (Munsey v. Clough, 196 U. S. 364; Com. v. Superintendent of County Prison, 220 Pa. 401; Hyatt v. People ex rel. Corkran, 188 U. S. 691; Ex parte Reggel, 114 U. S. 642), but this presumption is a rebuttable presumption and may be overcome by the relator by competent evidence: Com. v. Superintendent of County Prison, 220 Pa. 401; Illinois v. Pease, 207 U. S. 100; Com. v. Cooke, 55 Pa. Superior Ct. 435; Com. ex rel. Goloversic v. Abbott, Warden, 2 Wash. Co. Repr. 215.

In the hearing in this case, some of the witnesses produced by the demanding state testified that the indictment supporting the extradition warrant was secured before the grand jury of Brooke County, West Virginia, by the production of hearsay testimony, recitals by detectives of alleged information they claim to have collected, and by the reading before said grand jury of extracts from testimony of different witnesses given in another proceeding. This court, unfortunately for the relator, has no right to pass upon the validity of an indictment found in West Virginia. In addition to the presumption arising from the extradition warrant, the demanding state also produced a witness by the name of William A. White, who testified that the relator was with the armed marchers on their way to the Cliftonville mine, where Sheriff Duvall was killed; that he was armed and was seen with the marchers at the foot of the Cliftonville hill, at the other side of which the fight occurred. It must be observed that the witness White is not a self-confessed accomplice, he claiming that he was forced into the march against his will, and that he left it before the fight. This testimony is corroborated by the testimony of the witness Myers to some extent, although this last-mentioned witness being a self-confessed accomplice, his testimony, standing alone, would be of little value. It is a reasonable presumption that the relator, having joined with other armed men and having marched away together to accomplish a common purpose, stayed with and was one of that body of

4 D. & C.

marching men until that purpose was accomplished. We, therefore, conclude that the demanding state has by *prima facie* proof shown that the relator is a fugitive from the justice of the State of West Virginia. The evidence offered by the relator to overcome this *prima facie* proof consisted of the testimony of the relator's wife to the effect that her husband arrived home before, and there remained until after, the alleged crime was committed. This testimony would tend to establish an *alibi*, which issue, however, this court has no jurisdiction to pass upon: Hyatt v. Corkran, 188 U. S. 715; Munsey v. Clough, 196 U. S. 364. We, therefore, find as a matter of law that it is the duty of the court to remand the relator to the custody of the Sheriff of Washington County in order that he may execute the extradition warrant in his hands.

And now, to wit, Feb. 5, 1923, this case came on to be heard and was argued, whereupon, upon consideration thereof and for the reasons set forth in the foregoing adjudication, it is ordered, adjudged and decreed that the said relator, Mike Matulek, be and he is hereby remanded to the custody of Otto Luellen, High Sheriff of the County of Washington, Pennsylvania, to be by him retained for a period of fifteen full days from the date hereof (exclusive of this date), and if during said period of time no appeal be taken herefrom and perfected so as to become a *supersedeas* hereto, then to be delivered by him into the custody of George L. Caldwell, agent of the demanding state, in order that he, the said Mike Matulek, may be conveyed back to the State of West Virginia, from which he fled.

From Harry D. Hamilton, Washington, Pa.