## Commonwealth, ex rel., v. Warden of Schuylkill County Prison

*Albert L. Thomas, S. DiPierro,* and *J. J. Gallagher,* for Commonwealth.

*H. O. Bechtel, John B. Stevens,* and *B. J. Duffy,* for defendants.

HICKS, P. J., April 1, 1935.—The relator, Philip Bruno, and six other defendants are charged in five separate indictments with the murder of five persons. On November 6, 1934, Joseph J. Bruno, James Bruno, Alfred Bruno, and Paul Bruno were committed to the Schuylkill County

prison as were the relator, Arthur Bruno, and Anthony Orlando on November 15, 1934. Since then, all of them have been continuously in confinement.

On December 10, 1934, indictments were found against all of them. On December 21, 1934, each of the defendants applied for, and was allowed, a severance of trial in each case, so that, instead of five murder trials, the number became 35 trials if one disregards the possibility of each defendant being tried at one time and before one jury for five distinct murders. The next term of court, thereafter, for the trial of criminal cases began on January 7, 1935. On this day, Joseph J. Bruno, one of the defendants, was called to trial for the killing of one Fiorelli, and after continuous trial, was convicted of voluntary manslaughter on February 7, 1935, or 31 days thereafter.

On February 20, 1935, the Commonwealth presented its petition to the Supreme Court for a change of venue of all the cases of all the defendants, and a rule was issued out of the said court against the defendants, returnable March 4, 1935, with the direction that all proceedings in the cases were stayed in the meanwhile. The order is not in evidence, but counsel agree that it so provided. Answers to the rules were filed by the defendants. At the time of the writing of this opinion, the Supreme Court has not disposed of the rules.

The March term of court for the trial of criminal cases began on March 4, 1935, the return day in the Supreme Court of the rules for change of venue, and continued until March 16, 1935, when the petit jurors were discharged except those engaged in the actual trial of criminal cases. None of the defendants were called for trial during this term of court. On March 18, 1935, upon application of all the defendants, writs of habeas corpus were allowed. The contention of the relator and his codefendants, with the exception of Joseph J. Bruno, is that they are entitled to discharge from custody because they were not tried the

second term after their commitment through no fault of their own.

The January term for the trial of criminal cases began on January 7, 1935, and for the March term on March 4, 1935, both continued for 2 weeks according to our rules of court, and the venires issued accordingly. Criminal trials were immediately followed by civil trials for a 2 weeks' period. None of the defendants were called to trial in any of these two terms following continuous confinement except Joseph J. Bruno, and it is not contended that this failure was due to any application for delay by either of the defendants or with his assent. Because of this, the relator and his codefendants urge that the court must discharge them under section 54 of the Criminal Procedure Act of March 31, 1860, P. L. 427, 19 PS §781; Commonwealth v. Halderman, 299 Pa. 198, 200.

Section 54 of this act provides: "If any person shall be committed for . . . felony, . . . and shall not be indicted and tried . . . the second term, session or court after his or her commitment, unless the delay happen on the application or with the assent of the defendant, . . . he shall be discharged from imprisonment". This section is a transcript of section 3 of the Act of February 18, 1785, 2 Sm. L. 275: Report on the Penal Code, 51. "The use of the words 'term and sessions' does not mean a mere period of time in which the court might have sat, but an actual session available in law and in fact for the trial; and all circumstances of physical, moral, or legal necessities, which prevent trial, are exceptions which take a case out of the statute": Sadler, Criminal & Penal Procedure, 361, sec. 389.

Section 54 of the Act of 1860 applies only when there has been wilful delay on the part of the Commonwealth: Commonwealth v. Sheriff et al., 16 S. & R. 304 (1827); Commonwealth v. Jailer of Allegheny County, 7 Watts 366 (1838); Commonwealth, ex rel., v. Superintendent of the County Prison, 97 Pa. 211 (1881); and not where

the delay is made necessary by rules of law: Commonwealth v. Sheriff et al., supra; Clark v. Commonwealth, 29 Pa. 129 (1858) ; nor where the trial is delayed by the prisoner: The King v. Haas et al., 1 Dallas 9 (1761) ; Respublica v. Arnold et al., 3 Yeates 263 (1801) ; Commonwealth v. Sheriff et al., supra; Ex parte Walton, 2 Whart. 501 (1837) ; nor to a fugitive from justice, who has been arrested and committed: Commonwealth v. Hale, 13 Phila. 452 (1879) ; Commonwealth v. Pulte, 14 Phila. 398 (1880). See also Sadler, Criminal & Penal Procedure, 361, 362, sec. 389.

The intent and purpose of the two-term rule under the Act of 1860, supra, reënacting the Act of 1785, supra, has been defined by the Supreme Court. In the case of Commonwealth v. Sheriff et al., 16 S. & R. 304 (1827), Justice Tod, on pages 305 and 306, declares:

"What then, was the third section of the act, [1785] intended to provide against? I think it was intended to provide against the abuse of a protracted trial, to provide not only against the malice of a prosecutor, but against his negligence, against all *his* delays whether with cause or without cause, against every possible act, or want of action, of the prosecutor; but not to shield a prisoner in any case from the consequences of any delay made necessary by the law itself."

In Commonwealth v. Jailer of Allegheny County, 7 Watts 366 (1838), the Supreme Court held: "There is no doubt that necessity, either moral or physical, may raise an invariable exception to the letter of the *habeas corpus* act . . . The legislature intended to prevent wilful and oppressive delay".

"The Act of 18th February, 1785, in its title and preamble, shows that it was designed to prevent '*wrongful*' restraints of liberty. . . . The statute was made to restrain the malice and oppression of prosecutors, and to relieve *wrongful* imprisonment; not to embarrass the administration of the criminal law; not to relieve

righteous imprisonment, and to defeat public justice": Clark v. The Commonwealth, 29 Pa. 129, 134, 135 (1858) ; Commonwealth v. Henry, 19 Dist. R. 393, 394. It means "that a prosecutor should not allow two such terms or sessions of the court, at each of which the defendant might be legally indicted or tried, to lapse without bringing on the prosecution": Commonwealth v. Trost and Gunkel, 21 Dist. R. 1081, 1082. Mr. Justice Mercur in the case of Commonwealth, ex rel., v. Superintendent of the County Prison, 97 Pa. 211, on p. 214, asks the question: "What, then, was the object of the act? It was to prevent wrongful restraints of liberty, caused by malice and procrastination of the prosecutor, producing a wilful and oppressive delay in the trial".

It must be conceded from a survey of the decided cases in this State, most of which have been cited herein, that, notwithstanding the general language of the act, the provision for a discharge at the end of the second term does not apply where the trial has been prevented by any circumstances of moral, physical, or legal necessity. The right of discharge, under the statute, is not absolute, although in phrasing apparently imperative.

The seven defendants are and have been represented by the same counsel. Each of them, in the realm of possibility, through his application before the first available trial term for a severance of trial, was confronted with five separate murder charges. The special prosecutor at the very first term called for trial one of their number who, after 31 days, was convicted. By this time, the trial term was past, the jurors excused, and no opportunity afforded to call another case. That the seven could not have been tried at this term must be admitted and relator does not contend for it. We have four judges available for criminal trials and each was busy for the entire term, the judge in the trial of the one defendant sitting continuously for 4 weeks and thereby being unavailable for civil trials. Indeed, counsel for the relator, in oral argument, went no fur-

ther than to say that two of the defendants might have been tried and each for five homicides at one time, before different trial judges of course. He therefore tacitly admits that five of them could not have been tried because of physical impossibility. To have done as counsel contends, much confusion of necessity would have arisen, since the witnesses in large part are identical and equally numerous and would have required on the part of the defendants a division of counsel as well as on the part of the Commonwealth, specially designated by the Attorney General. And, out of the three common pleas judges, only one would have been available for the trial of civil causes, thus disrupting the trial of civil cases unreasonably to the prejudice of the litigants. And, following the argument of counsel, since only one of the defendants, other than the one tried, could have been tried in the January term, then, were six prejudiced or if five, who are they?

The reason for the failure to call them for trial in the second or March term is quite obvious but counsel for the relator urge that this omission was due to an act of the Commonwealth under its legal right which must work against it and in favor of the defendants. Thirteen days after the verdict of guilty of one of the defendants, the Commonwealth, on February 20, 1935, applied to the Supreme Court for a change of venue in all remaining cases upon allegations of prejudice which became known to it after verdict and investigation. The Supreme Court made the rule returnable on March 4, 1935, directing therein that all proceedings in the cases were stayed in the meanwhile. The return day in the Supreme Court was the first day of criminal trials in the March term and that term, as far as criminal trials were concerned, has long since ended and the rule is undisposed of. This was the second term after the commitment and it is not denied that there was then a legal barrier in the way of calling any of the defendants to trial in the order of the Supreme Court.

But, since this legal delay was the result of the Commonwealth's action, unassented to by the defendant, it does not prevent the application of the habeas corpus act and works his discharge, argues counsel for defendant. With this we cannot agree. The five homicides arise out of the same set of circumstances and are part and parcel of an unfortunate episode in the past November election eve experience of the Kelayres community in this county and received a great deal of public attention. After the first trial, the special prosecuting attorneys, allegedly learning some facts which, it is claimed and so represented to the Supreme Court in the petitions for change of venue, were prejudicial to the Commonwealth and would be so in any future trials of any and all of the seven defendants, in their discretion, took a permissible legal step to insure, and they thought, impartial trials through a change of venue. The time elapsing between the conviction and the presentation of the petitions, 13 days, cannot be considered unreasonable or one of undue delay. The Supreme Court has had the matter in its hands under an order staying all proceedings, with the result that the March term passed by without call for trial. Hence, there was legal necessity for this delay and even though the Commonwealth actuated the order of the Supreme Court, and the legal procedure protracted the trials, no advantage can result therefrom to the defendants. It cannot be that the conduct of the Commonwealth in the pursuit of legal forms in good faith and with reasonable dispatch to attain impartial trials of criminal cases, if no undue delay is occasioned, would work a discharge of a person or persons charged with homicide. An impartial trial is as important to the Commonwealth as it is to the defendant and the information of alleged inability of future impartial trials did not reach the Commonwealth until after the first trial.

The defendants do not charge the Commonwealth's special prosecuting attorneys with undue delay, malice,

negligence, or oppression. It is not charged that the application to the Supreme Court for change of venue was made intentionally to delay the trials. There is no charge of bad faith whatever. The sole contention is that, two terms having passed, the defendants must, without exception and notwithstanding all relevant circumstances, since they did not assent, be discharged from custody. We think the delay was justifiable under the circumstances and that legal necessity as well as physical impossibilities of trials take this case out of the mandate of the statute. The Act of 1860, supra, is inapplicable.

The defendant urges upon us the case of Commonwealth v. Sukena, 11 D. & C. 340, wherein our then President Judge Koch discharged, upon motion, one charged with murder because two terms expired after commitment without trial. But there appeared in that case no justification for the delay and the court expressly declared that the case could have been heard at the second term. That is not this case. The same judge in Commonwealth, ex rel., v. Morgan, 29 Dist. R. 985, refused to discharge the defendant even though two terms expired without trial because there was no showing of wilful delay, there was insufficient opportunity for the district attorney to prepare for trial and compulsory absence of necessary witnesses for the Commonwealth. See also Commonwealth v. Daniele et al., 2 Wash. 217; Commonwealth, ex rel., v. Boldt, 4 Somerset L. J. 329.

And now, April 1, 1935, the writ is discharged.

From M. M. Burke, Shenandoah.